# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RASHAD WILLIAMS | : CIVIL ACTION |
|---|---|
| v. | : |
| | : NO. 17-4348 |
| DELAWARE COUNTY BOARD OF | : |
| PRISON INSPECTORS, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                                **November 28, 2017**

Challenging specific conditions of his confinement as a pre-trial detainee at the George W. Hill Correctional Facility ("Prison") and the Delaware County Courthouse holding cell, Rasheed Williams brings a *pro se* civil rights[1] action against the Delaware County Board of Prison Inspectors ("Prison Board"), Community Education Centers Corp. ("CEC"), the "Media Pennsylvania Sheriff Department" ("Sheriff's Department")[2], the Prison Warden, and various individuals allegedly employed by the Pennsylvania Department of Corrections.[3] He alleges Defendants acted with deliberate indifference to deprive him of his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments, and alleges state law claims against Defendants for negligent and intentional infliction of emotional distress, false imprisonment, "willful misconduct" as well as violations of Department of Corrections "standards." Mr. Williams alleges a municipal liability claim against the Prison Board, CEC, and the Sheriff's Department.

Two of the seventeen defendants - Criminal Investigation Division Detective Corsi and the Sheriff's Department – now move to dismiss the Amended Complaint.[4] In the accompanying order, we grant the motions without prejudice for Mr. Williams to file a Second Amended Complaint.[5]

## I. Alleged facts

Mr. Williams broadly claims a range of abuses suffered as a pre-trial detainee at the Prison over a nine month period.[6] From August 25, 2015 through November 6, 2015, Mr. Williams alleges the Prison: broke his glasses during a "shake down" of his cell; placed him on disciplinary segregation; denied him access to speak to a counselor, Sergeant, or Lieutenant; handcuffed him during "out cell activities"; moved him to a restricted housing unit; Defendant Correction Officers E. Hitchens and Gloria Jenkins used inflammatory remarks and Correction Officer E. Hitchens threatened him with bodily harm; denied him food and recreation; placed him in a cell with violent inmates in the "Media courthouse"; denied him a change of clothing for forty days; and promised him a release from confinement but moved him back to area "10 D" of the Prison.[7]

After requesting an interview with the Criminal Investigation Division, Mr. Williams met with Detective Corsi on November 6, 2015, and, after their meeting, the Prison returned him to a restricted housing unit.[8] Mr. Williams alleges he told Detective Corsi about the abuses, making Detective Corsi "deliberately indifferent" to Mr. Williams' health and safety in violation of his Eighth Amendment right to be free from cruel and unusual punishment.[9]

On the day he met with Detective Corsi, Mr. Williams alleges the Prison denied him an evening meal and all meals for the next three days with the exception of breakfast on one day.[10] Mr. Williams then sought medical treatment with a psychologist and subsequently admitted to a "secured maximum unit" for suicide watch.[11] After remaining on suicide watch unit for two days, the Prison returned Mr. Williams to "10 b max" and denied him meals on two days.[12] Mr. Williams alleges he overheard Defendant Sergeant Baldwin tell block workers to starve him and Mr. Gatling.[13]

Mr. Williams alleges on November 30, 2015, he again went to "Media Pennsylvania Court" where he was placed in a "max cell" with violent inmates.[14] Although unclear, we assume Mr. Williams then returned to the Prison where he allegedly suffered abuses from December 9, 2015 through April 2016 including: being given food smelling like feces; the denial of food, personal property, phone calls, razors, commissary, and grooming; the denial of medical care for a panic/anxiety attack; denial of speaking with Defendant Richard Leach (presumably to air his grievances), a grievance coordinator, and a counselor; being threatened by Defendant Correction Officer Gloria Jenkins and Defendant Sergeant Baldwin with further punishment and bodily harm; the denial of access to "legal copies, case laws, [and] legal references" by the Prison librarian Defendant Dana Keith; and having his "legal mail" opened outside his presence.[15] Mr. Williams additionally alleges the Prison, through Defendant Chaplin Cokeda Dunn, denied him a reasonable opportunity to attend Ta'leem and Jumu'ah.[16]

Mr. Williams alleges he filed "countless requests/complaints/grievances" to which the Prison never responded, the Prison retaliated against him for filing grievances and "pursuing lawsuits," and ultimately transferred him to State Correctional Institution in Graterford, Pennsylvania on May 13, 2016.[17]

Against all Defendants, including the individual Defendants in their individual and official capacities, Mr. Williams alleges:

• Violations of his right to be free from cruel and unusual punishment and right to due process under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution (Count 1);

• "Federal Constitutional Claims" alleging "all defendants having the power to correct these violations and having the duty to act or respond after being duly aware of due process and

3

constitutional violations by the plaintiffs and knew or should have known that . . . their subordinates": delayed and/or denied to remedy the wrongs complained of; violated generally accepted rules; caused undue mental and psychological damage; and "defendants" failed to train, supervise, investigate, monitor, and discipline their subordinates after being informed of the constitutional violations (Count 3);

• State law claims for violations of the Department of Corrections standards and duties of care; negligent and intentional infliction of emotional distress; and, in the Relief Sought section, false imprisonment and "willful misconduct" (Counts 2 and 5);

• Failure "in their responsibilities for insuring the availability of adequate funding for plaintiffs serious weight loss" (Count 6); and

• Punitive damages (Count 7).

Mr. Williams alleges a municipal liability claim in Count 4 against the Sheriff's Department, Prison Board, and CEC. With regard to the Sheriff's Department, Mr. Williams alleges its policies, customs, and practices concerning pre-trial, protective custody plaintiffs failed to comply with "general accepted standards" of the Prison and Bureau of Corrections.

## II.     Analysis[18]

Detective Corsi and the Sheriff's Department each move to dismiss Mr. Williams' complaint for failure to state a claim. Mr. Williams *pro se* responded to the motion to dismiss.[19] Mr. Williams' opposition provides more particularized facts regarding Detective Corsi: the interview with Detective Corsi is recorded and would confirm Detective Corsi assured Mr. Williams he (Detective Corsi) "would interview and redress" the issues raised by Mr. Williams. Mr. Williams also contends Detective Corsi has the power to investigate the "Defendants" and, in failing to do so, acted with deliberate indifference to Mr. Williams' health and safety.

4

### A. The Amended Complaint fails to state a claim against the Sheriff's Department.

Mr. Williams alleges on two occasions – October 13, 2015 and November 30, 2015 – the Sheriff's Department put him in a "max cell" with "violent prone inmates" at the "Media Courthouse."[20] Liberally construing Mr. Williams' Amended Complaint, his municipal liability claims against the Sheriff's Department are based on: (1) "encourag[ing] tolerance and ratification" of policies, customs, and practices concerning pre-trial, protective custody plaintiffs "which failed to comply with general[ly] accepted standards" of the Prison and Bureau of Corrections;[21] and (2) acting with deliberate and reckless indifference to Mr. Williams' Eighth Amendment right to be free from cruel and unusual punishment by placing him in the same holding cell with violent inmates even after been told of Mr. Williams' "custody level."[22]

The Sheriff's Department argues the Amended Complaint fails to state a claim for three reasons: (1) the Amended Complaint fails to identify any individual against whom a claim could be made and the allegations do not arise to a level of a constitutional violation; (2) the Sheriff's Department is not an entity capable of being sued; and (3) even if the Amended Complaint could be construed as a claim against Delaware County, it fails as a matter of law because Delaware County may only be liable for the conduct of an individual employee or officer when the conduct implements an official policy or practice and the Amended Complaint makes not such allegations.

#### 1. Mr. Williams does not state a municipal liability claim against the Sheriff's Department.

Municipalities and other local government bodies may be liable under 42 U.S.C. § 1983 for constitutional violations caused by a policy or custom.[23] Liability attaches only when "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[24] To state

5

a claim for municipal liability under *Monell*, Mr. Williams must plead: "(1) [he] possessed a constitutional right of which [he] was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'"[25] A municipality's policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by" the governing body's officers.[26] A custom, though "not formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[27]

A municipality may also be liable where its failure to train or supervise employees amounts to deliberate indifference to a plaintiff's constitutional rights.[28] To amount to "deliberate indifference," a plaintiff must plead: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[29] "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[30] A municipality's policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the 'deliberate indifference' - necessary to trigger municipal liability."[31]

We construe Mr. Williams' *Monell* claim as alleging the Sheriff's Department had a policy or custom of housing pre-trial detainees with violent inmates. Mr. Williams' claim is defective because he may not bring a claim against the Sheriff's Department. A claim under § 1983 may only be brought against municipalities, not police or sheriff's departments because

6

they are "merely an administrative arm of the local municipality, and [are] not a separate judicial entity."[32] Mr. Williams' *Monell* claim is additionally defective because he has not alleged an injury as a result of the alleged policy or custom. In Counts 3 and 6, Mr. Williams alleges generally the "subordinates" of all Defendants "caused undue mental and psychological damage" to him and Defendants failed to ensure "adequate funding for [his] serious weight loss."

We dismiss Mr. Williams' claim against the Sheriff's Department, but will allow him to again amend his complaint to state a claim against Delaware County, the municipality, if possible, and to allege with greater specificity the injuries he alleges to have suffered as a result of being housed with violent inmates in the Delaware County Courthouse.

### 2. Mr. Williams fails to plead an Eighth Amendment claim against the Sheriff's Department.

Mr. Williams alleges his placement in the same holding cell with violent-prone inmates violates his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment's cruel and unusual punishments clause imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."[33]

Mr. Williams, as a *pro se* party, may not be aware the Eighth Amendment does not apply to his pre-trial claims. As a pre-trial detainee, we apply the Fourteenth Amendment's due process clause rather than the Eighth Amendment to Mr. Williams' claims against the Sheriff's Department.[34] "[U]nder the Constitution's guarantees of due process, an unsentenced inmate 'is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment.'"[35] As a pre-trial detainee, Mr. Williams has a "clearly established constitutional right to have prison officials protect him from inmate violence."[36]

"To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a

7

substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm."[37] Mr. Williams fails to allege the requisite element he suffered harm from confinement in a cell with violent inmates. We dismiss Mr. Williams' claims, but allow him to again amend his complaint to allege harm, if any, arising from the confinement.

### B. Mr. Williams fails to state a claim against Detective Corsi.

We accept as true, as we must on a motion to dismiss, Mr. Williams' allegation he told Detective Corsi of abuses suffered as of the date of their meeting on November 6, 2015, making Detective Corsi deliberately indifferent to Mr. Williams' health and safety.

Detective Corsi argues Mr. Williams fails to state a claim against him for three reasons: (1) the Amended Complaint fails to allege how Detective Corsi had the power or authority to intervene in Mr. Williams' disputes with the Prison and Prison employees; (2) as a matter of law, prison officials who fail to act favorably to an inmate's grievance is not in itself a constitutional violation; and (3) Detective Corsi has qualified immunity.

As a pre-trial detainee, Mr. Williams' claim alleging unconstitutional conditions of confinement is analyzed under the due process clause of the Fourteenth Amendment.[38] Mr. Williams must establish his conditions amount to punishment.[39] To determine whether conditions of confinement constitute punishment in violation of due process, our court of appeals applies a two-step test: (1) "whether any legitimate purposes are served by these conditions"; and (2) "whether these conditions are rationally related to these purposes."[40]

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." As presently pleaded, we cannot determine the nature of the claim against Detective Corsi. It is unclear whether Mr. Williams attempts to hold

8

Detective Corsi liable, along with Prison officials, for the conditions of his confinement, or whether Mr. Williams is attempting to hold Detective Corsi liable for failing to investigate allegations regarding abusive prison conditions, or if Mr. Williams attempts to articulate some other theory of liability. We dismiss Mr. Williams' claims against Detective Corsi without prejudice to amend his complaint to comply with Rule 8.

### III. Conclusion

In the accompanying orders, we grant the motions to dismiss of the Sheriff's Department and Detective Corsi without prejudice to Mr. Williams to file an amended complaint consistent with this opinion.

---

[1] 42 U.S.C. § 1983.

[2] We interpret Mr. Williams' identification of the "Media Pennsylvania Sheriff Department" to mean the Delaware County Sheriff's Office located in Media, Pennsylvania. The County of Delaware filed a motion to dismiss on behalf of the Sheriff's Department. *See* ECF Doc. No. 22.

[3] Mr. Williams and plaintiff Terrell Gatling originally filed a complaint on September 28, 2017. We granted Mr. Williams's motion to proceed *in forma pauperis* and directed the Clerk of the Court to file his amended complaint (ECF Doc. Nos. 8, 11). We dismissed Mr. Gatling's complaint without prejudice for his failure to pay the requisite filing fee or file a motion to proceed *in forma pauperis*, and sign his complaint (ECF Doc. No. 4). Mr. Gatling did not thereafter move to proceed *in forma pauperis* or pay the filing fee.

[4] ECF Doc. Nos. 19, 22. Defendants James Hyman, Michael Hellriegel, and E. Hitchens have not been served. Counsel for the remaining Defendants Prison Board, CEC, David Byrne, John Riley, Jr., Esq., Richard Leach, Sergeant App, Sergeant Baldwin, Sergeant Carter, Gloria Jenkins, Dana Kieth, Brian Conley, and Cokeda Dunn accepted service of the complaint on their behalf on October 18, 2017 (ECF Doc. No. 26). The remaining served Defendants are not required to respond to the Amended Complaint until December 18, 2017. In the accompanying Order, we direct responses from all served Defendants to be filed within fourteen days of the filing of the Second Amended Complaint.

[5] Both Detective Corsi and the Sheriff's Department move to dismiss under Rules 12(b)(1) and 12(b)(6), but make no argument supporting a 12(b)(1) motion. Accordingly, we deny the motions on Rule 12(b)(1) grounds and address only Defendants' Rule 12(b)(6) argument.

[6] ECF Doc. No. 11 at ¶¶ 5(1) – 5(52).

9

⁷ *Id.* at ¶¶ 5(1) – 5(21).

⁸ *Id.* at ¶ 5(22). Although not entirely clear, the Criminal Investigation Division is a function of Delaware County. Mr. Williams additionally alleges "Philadelphia County Attorney" Joseph Casey went to the Prison to meet with him on October 23, 2015, November 6, 2015, and November 9, 2015, and some unidentified person at the Prison told Mr. Casey that Mr. Williams did not want to see him. *Id.* at ¶ 5(32).

⁹ *Id.* at Argument ¶ A(15).

¹⁰ *Id.* at ¶¶ 5(23) – 5(26).

¹¹ *Id.* at ¶¶ 5(27).

¹² *Id.* at ¶¶ 5(28) – 5(30).

¹³ *Id.* at ¶ 5(31).

¹⁴ *Id.* at ¶ 5(33).

¹⁵ *Id.* at ¶¶ 5(34) – 5(48).

¹⁶ *Id.* at ¶ 5(52), Argument ¶ A(17). In the Muslim religion, Ta'leem is a religious study period "generally held on a weekly basis though there is no religious obligation to attend" and Jumu'ah "is a group prayer service held on Fridays that every Muslim is obligated to attend if possible." *Sharp v. Johnson*, 669 F.3d 144, 147 (3d Cir. 2012).

¹⁷ ECF Doc. No. 11 at ¶ 5(51).

¹⁸ In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires we apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[19] ECF Doc. No. 29.

[20] We assume Mr. Williams' reference is to the Delaware County Courthouse in Media, Pennsylvania. We are directed by our court of appeals to construe the complaint of a *pro se* plaintiff liberally when considering a motion to dismiss. *Rister v. Yadkin Bank*, ---F.App'x ---, No. 16-3739, 2017 WL 5483614, at *2 (3d Cir. Nov. 15, 2017) (citing *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003)).

[21] ECF Doc. No.11 at Count 4.

[22] *Id.* at Argument section ¶ 16.

[23] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).

[24] *Id.* at 694.

[25] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

[26] *Monell*, 436 U.S. at 690.

[27] *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 690-91).

[28] *City of Canton v. Harris*, 489 U.S. 378, 385-87 (1989).

[29] *Simpson v. Ferry*, 202 F.Supp.3d 444, 455 (E.D. Pa. 2016).

[30] *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Comm'rs of Bryan Cnty.*, 520 U.S. at 409).

[31] *Id.* (quoting *Bd. of Comm'rs of Bryan Cnty.*, 520 U.S. at 407).

³² *Padilla v. Twp. of Cherry Hill*, 110 F.App'x 272, 278 (3d Cir. 2004) (quoting *DeBelis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D. Pa. 2001)).

³³ *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

³⁴ *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citations omitted); *Hubbard v. Taylor*, 399 F.3d 150, 157-58 (3d Cir. 2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 530 (1979)). Mr. Williams alleges Defendants' deliberate indifference violated his right to be free from cruel and unusual punishment "and/or" his right to due process under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments. ECF Doc. No. 11 at Count 1.

³⁵ *Bistrian*, 696 F.3d at 367 (quoting *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000)); *Hubbard*, 399 F.3d at 157-58; *Mestre v. Wagner*, No. 11-2191, 2012 WL 299652, at *3 (E.D. Pa. Feb. 1, 2012).

³⁶ *Bistrian*, 696 F.3d at 367 (footnote omitted).

³⁷ *Id.* (citing *Farmer*, 511 U.S. at 834).

³⁸ *Hubbard*, 399 F.3d at 159.

³⁹ *Id.* at 158 (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

⁴⁰ *Id.* at 159-60 (citation omitted); *Robinson v. Danberg*, 673 F.App'x 205, 212 (3d Cir. 2016) (quoting *Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (3d Cir. 1983)).