**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RASHAD WILLIAMS** | **: CIVIL ACTION** |
| | : |
| v. | : |
| | **: NO. 17-CV-4348** |
| **DELAWARE COUNTY BOARD OF** | : |
| **PRISON INSPECTORS, *et al.*** | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **July 2, 2018**

Rashad Williams claims state actors abused his constitutional rights while detaining him at the George W. Hill Correctional Facility and in the Delaware County Courthouse holding cell. His third amended *pro se* complaint alleges facts, but no legal theories, against the Delaware County Board of Prison Inspectors, Community Education Centers, Inc., Delaware County, James Hyman, Michael Hellriegel, David Byrne, John Riley, Jr., and numerous corrections officers and employees of the Prison.[1]  After three attempts, he fails to plead the required basis for a civil rights claim. His pleaded facts, especially as to denying him 75% of his meals over four days, may afford relief but Mr. Williams needs to tell us who did what, why the entities could be liable based on a policy or custom, and his specific legal claims. While we can liberally construe his *pro se* allegations, we cannot create legal theories or assume liability simply because an entity is involved with a prison or an individual works at a prison.  While we would be inclined to deny Mr. Williams yet another opportunity (his fourth) to amend, we will do so today in the event he can tie the alleged abuses to a custom or practice of an institution or to an individual's specific conduct towards him.

## I. Pleaded facts[2]

Mr. Williams alleges a list of abuses suffered as a detainee while incarcerated at the George W. Hill Correctional Facility (Prison) between August 2015 and May 2016, when he transferred from the Prison to the State Correctional Institution at Graterford. Beginning on August 25, 2015, Mr. Williams alleges Officer Eli Hitchens and "cert member Walker" "shook down" his cell causing his glasses to break, "while being observed by C/O Hillard."[3] On September 16, 2015, Mr. Williams received a misconduct report for allegedly fighting, and placed in disciplinary segregation.[4] He received a notice of hearing scheduled for September 22 and 23, 2015 before hearing examiner Abt.[5] On September 17, 2015, Officer Gloria Jenkins denied him access to speak with a counselor, sergeant, or lieutenant.[6]

Mr. Williams alleges his situation worsened toward the end of September 2015 when, on September 23, he "donned the red clothing of maximum security," and some unidentified actor at the Prison moved him to maximum security, and from then on, correctional officers handcuffed him during out of cell activities "via" Sergeant Carter.[7] Several days later, Chief of Security Richard Leach ordered Mr. Williams moved to a restricted housing unit.[8] The same day he moved to the restricted housing unit, Officers Jenkins and Hitchens used inflammatory remarks towards Mr. Williams, and Officer Hitchens threatened him with bodily harm.[9] Mr. Williams submitted a request to Superintendent Riley "to look into these occurrences."[10] On September 29 and 30, 2015, Mr. Williams alleges the removal of food from his tray and the denial of dinner under the supervision of Officers Jenkins and Hitchens, and Sergeant Baldwin.[11] Officer Jenkins denied Mr. Williams recreation on October 1 and 5, 2015.[12]

On October 13, 2015, the Sheriff's Department put him in a cell with "violent prone inmates" at the Delaware County Courthouse while awaiting an "afternoon court" appearance.[13]

The same day, Officer Jenkins denied Mr. Williams a change of clothes.[14] On his return to the Prison from the Delaware County Courthouse, Mr. Williams alleges he signed a "contract" with Sergeant Carter in which Sergeant Carter promised Mr. Williams "release from confinement."[15] Despite the agreement, Sergeant Carter moved Mr. Williams back to "10-D" – presumably a maximum security unit – on October 20, 2015 and was told "his matter will be further investigated."[16] Officer Jenkins denied Mr. Williams recreation, a request to see a counselor, and a change of clothing after wearing the same clothing for 40 days.[17]

On October 29, 2015, Mr. Williams requested an interview with the Criminal Investigation Division.[18] On November 6, 2015, Mr. Williams had an interview with Detective Corsi of the Criminal Investigation Division.[19] He does not allege facts regarding the substance of his meeting with Detective Corsi.

After meeting with Detective Corsi on November 6, 2015, Mr. Williams returned to the restrictive housing unit at the Prison.[20] He alleges the denial of several meals after his meeting with Detective Corsi, one at the direction of Sergeant Baldwin and "under the supervision of all shifts" and "both shifts," but does not allege a specific individual supervisor for any shift.[21] Mr. Williams then saw the Prison's psychologist who admitted him to a "secured maximum unit" for suicide watch.[22] After being on suicide watch for two days, the Prison returned him to "10 B max" on the orders of Chief of Security Leach, and the Prison again denied him meals for two more days under the supervision of "all shifts," but not identifying any supervisor or any individual who denied him meals.[23] Mr. Williams alleges he overheard Sergeant Baldwin tell block workers to starve him.[24]

On November 23, 2015, Mr. Williams met with his attorney, Joseph Casey, in Philadelphia. Mr. Casey told Mr. Williams he (Mr. Casey) went to the Prison to visit Mr.

3

Williams on October 23, November 6, and November 9, 2015 but the Prison denied the visits, ostensibly because Mr. Williams did not want to see him.[25]

On November 30, 2015 – again, presumably for a court appearance – Mr. Williams went to the Delaware County Courthouse where the Sheriff's Department again placed him in "max cell #9" with violent prone inmates putting him at risk of "psychological abuse, sexual predation, and verbal insults."[26] Although he alleges housing with violent prone inmates put him at risk for abuse, he does not allege actual harm.

The alleged abuse at the Prison continued into December 2015 when Mr. Williams received food smelling like feces under the supervision of a "John Doe c/o"; finally received clean clothing; Sergeant Baldwin denied him personal property; Officer Jenkins denied him phone calls, razors, and commissary; Sergeant Baldwin and an unidentified shift sergeant denied him meals and had food removed from trays; and Officer Jenkins denied him access to medical treatment after suffering a panic/anxiety attack.[27]

On January 10, 2016, Mr. Williams attempted to speak with Chief Security Officer Leach, but Mr. Leach "flagged him off."[28] Throughout January 2016, Mr. Williams alleges Officer Jenkins and Sergeant Baldwin both threatened him with bodily harm; Officer Jenkins threatened him with "further punishment" and denied him a counselor visit; and non-party "D. Swider," a grievance coordinator, denied him access to grievances after filing "countless requests/complaints" regarding the alleged abuses.[29]

Mr. Williams alleges continuing deprivations throughout the spring 2016, alleging Chief of Security Leach denied him access to a haircut; the prison librarian, Dana Keith, denied him access to the courts "i.e. legal copies, case laws, legal references;" and under the supervision of Brian Conley, someone opened mail from his attorney, Joseph Casey, outside of Mr. Williams's

4

presence; and, the Prison denied him a reasonable opportunity to attend Ta'leem and Jumu'ah, Muslim religious services.[30]

Mr. Williams asked Chief Security Officer Leach why the Prison kept Mr. Williams on "F.O.R (forever on restriction)" and, on May 11, 2016, filed a final grievance.[31] Mr. Williams alleges he never received any responses to his grievances from the Prison, and the Prison eventually retaliated against him for filing these grievances by transferring him to State Correctional Institution at Graterford on May 13, 2016.[32]

## II.    Analysis

All served Defendants move to dismiss Mr. Williams's complaint for failure to state a claim. Delaware County moves to dismiss the Third Amended Complaint for failing, as a matter of law, to state a claim against it under *Monell v. Dep't of Soc. Servs.*[33] The Prison Board, CEC, and individual defendants together move to dismiss the Third Amended Complaint.

The operative complaint is the Third Amended Complaint. In his Third Amended Complaint, Mr. Williams brings his claims under 42 U.S.C. § 1983, but does not plead claims or the relief sought. After Defendants moved to dismiss the Third Amended Complaint, Mr. Williams filed a "Motion to Oppose Defendants' Motion to Dismiss Third Amended Complaint," which we considered a response to the motions to dismiss.[34] In his response, Mr. Williams concedes he omitted legal claims in his Third Amended Complaint; he refers Defendants "back to the other two (2) previous complaints" but does not incorporate the earlier complaints.[35] We cannot consider the Amended Complaint or the Second Amended Complaint. The filing of the Third Amended Complaint "supersedes" the earlier complaints and "renders [them] of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading."[36] Mr. Williams did not incorporate his earlier complaints. In an abundance of caution

5

to preserve a *pro se* prisoner's efforts to challenge perceived civil rights claims, we granted Mr. Williams leave to file a fourth amended complaint combining both facts and a legal claim. He did not do so. So we are left with one pleading for review on a motion to dismiss.

We construe the Third Amended Complaint as alleging a § 1983 violation against the Defendants. As Mr. Williams proceeds *pro se*, we construe his allegations liberally.[37]

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"[38] A plaintiff seeking relief under § 1983 must plead "defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury."[39] Under the Supreme Court's decision in *Monell*, a municipality, such as Delaware County, may be liable under § 1983. However, a municipality may not be held responsible for the acts of its employees or agents under a theory of *respondeat superior*.[40]

Mr. Williams does not allege whether he is a pretrial detainee or a sentenced inmate at the Prison. The Eighth Amendment's Cruel and Unusual Punishments Clause applies "after sentence and conviction."[41] The Fourteenth Amendment's due process clause protects pretrial detainees.[42] The Fourteenth Amendment offers pretrial detainee rights "at least as great as the Eighth Amendment protections available to a convicted prisoner."[43] We analyze Mr. Williams's § 1983 claims under the same standard as applied in Eighth Amendment cases.[44]

### A. Mr. Williams does not plead a *Monell* claim.

Delaware County, the Prison Board and CEC seek dismissal arguing Mr. Williams does not plead their liability as an institution under *Monell*. To plead municipal liability under *Monell*, Mr. Williams must allege "(1) [he] possessed a constitutional right of which [he] was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] 'amount[ed]

6

to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'"[45] A municipality's policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by" the governing body's officers.[46] A custom, though "not formally approved by an appropriate decision maker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[47]

Mr. Williams must also plead a policymaker with final decision-making authority took action consistent with the alleged policy or custom[48] and his injuries were caused by the policy or custom.[49] A plaintiff cannot recover under § 1983 for emotional distress unless he "present[s] evidence of 'actual injury,'"[50] because "civil rights claims are intended to 'compensate injuries caused by the [constitutional] deprivation.'"[51]

To prove failure to train amounted to deliberate indifference, Mr. Williams must plead "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[52] If policymakers "are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizen's constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."[53] A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[54]

### *Mr. Williams does not plead Delaware County's Monell liability.*

We construe Mr. Williams's Third Amended Complaint as attempting to bring a *Monell* claim against Delaware County to be based on a policy or custom of holding detainees with

7

violent inmates in cells at the Delaware County Courthouse. Mr. Williams alleges on two separate occasions, Delaware County, acting through the Sheriff's Department, placed him in a holding cell with violent inmates at the Delaware County Courthouse.[55] He alleges the County knew or should have "known about [his] arrest warrant via Senior Magisterial District Judge Larry E. Smith."[56]

Delaware County argues the (1) Third Amended Complaint mentions the County only in an allegation it would have or should have been aware of Mr. Williams's arrest warrant issued by a Magisterial District Judge and the County is not liable for the acts of a judicial officer; [57] (2) the Third Amended Complaint fails to identify any unconstitutional policy; and (3) the County is not liable for the action or inaction of the Prison Board or CEC. [58]

The Eighth Amendment's cruel and unusual punishments clause imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."[59]  Assuming Mr. Williams is proceeding as a pretrial detainee, he has a "clearly established constitutional right to have prison officials protect him from inmate violence."[60]

Mr. Williams does not plead a policy of housing detainees or non-violent convicted inmates with violent prone inmates. He does not plead a custom of this conduct. Even assuming we could infer a policy of housing either pretrial detainees or non-violent convicted inmates with "violent prone" inmates at the Delaware County Courthouse, Mr. Williams fails to allege a policymaker or damages.  As we found in our memorandum dismissing Mr. Williams's Amended Complaint, Mr. Williams fails to plead damages. "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the

8

official's deliberate indifference caused him harm."[61] Mr. Williams fails to allege the requisite element he suffered harm from confinement in a cell with violent inmates. To the extent Mr. Williams suggests any emotional harm resulting from the County's alleged unconstitutional policy, he fails to plead actual harm.

### *Mr. Williams fails to plead the Prison Board's or CEC's Monell liability.*

The Prison Board and CEC concede they may be liable as state actors under a *Monell* theory only if their policy and custom is a "moving force" behind the constitutional violation. The Prison Board and CEC argue Mr. Williams fails allege a policy, including a failure to train, or custom and any facts to support a claim their failure to train or supervise caused the alleged constitutional deprivations.

To adequately plead a *Monell* claim against the Prison Board or CEC, Mr. Williams must plead "(1) [he] possessed a constitutional right of which [he] was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'"[62]

For the reasons he fails to state a *Monell* claim against Delaware County, Mr. Williams's *Monell* claim against the Prison Board and CEC is dismissed. While the alleged abuses warrant examination should Mr. Williams identify the persons engaging in this conduct, he has not pleaded this conduct is part of a policy or custom amounting to deliberate indifference. We cannot assume this liability.

### B. Mr. Williams fails to plead claims against individual defendants.

Mr. Williams sues James Hyman, Michael Hellriegel, David Byrne, John Riley, Jr., Esq., Richard Leach, Sergeant Abt, Sergeant Baldwin, Sergeant Carter, Gloria Jenkins, Eli Hitchens,

9

Dana Keith, Brian Conley, and Cokeda Dunn. The Prison no longer employs Messrs. Hyman, Hellriegel, and Hitchens and Mr. Williams has not affected service upon them.

To state a claim for relief under § 1983, Mr. Williams must show each defendant, acting under color of law, violated his federal constitutional or statutory rights, and caused the complained of injury.[63] The individual defendants cannot be liable under § 1983 unless each had "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operations of *respondeat superior*."[64] "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity."[65] The individual defendants ("Prison Defendants") argue the Third Amended Complaint (1) fails to allege personal involvement of any of the individual defendants in the alleged constitutional deprivations required to establish personal liability under § 1983; (2) claims against prison librarian Dana Keith should be dismissed for failing to plead actual injury; (3) claims against Officer Jenkins and Sergeant Baldwin fail to state a claim as a matter of law because threats or harassment do not rise to a constitutional violation.

### *We dismiss all claims against Superintendent Riley.*

The only mention of Superintendent John Riley is an allegation Mr. Williams "submitted a request to Superintendent Riley to look into these occurrences."[66] Although Mr. Williams does not identify them, we infer the "occurrences" to be alleged conditions of his confinement at the Prison including the shakedown of his cell; disciplinary segregation; denial of access to a counsel, sergeant, or lieutenant; wearing red clothing of maximum security and handcuffing during out-of-cell activities; placement in a restricted housing unit; the use of inflammatory remarks and threats of bodily harm by Correction Officers Jenkins and Hitchens.[67]

To the extent Mr. Williams attempts to hold Superintendent Riley liable for the alleged

10

actions of other Prison employees, we must dismiss this claim as Superintendent Riley cannot be held liable on a *respondeat superior* theory, and Mr. Williams fails to allege Supervisor Riley's personal involvement in the challenged events. To the extent Mr. Williams attempts to hold Superintendent Riley liable for his alleged failure to "look into these occurrences" complained of, any such claim is dismissed. "Inmates do not have a constitutionally protected right to the prison grievance process."[68] Mr. Williams fails to state a claim against Superintendent Riley.

### *We dismiss all claims against hearing examiner Abt.*

Mr. Williams's only mention of hearing examiner Abt concerns Mr. Williams asking for, and receiving a notice of, a hearing with Defendant Abt after receiving a misconduct report for fighting resulting in disciplinary segregation.[69] He does not allege a constitutional wrong, or personal involvement by Defendant Abt in any alleged wrong. Mr. Williams fails to state a claim against Ms. Abt.

### *We dismiss all claims against Chief Leach and Sergeant Carter.*

Mr. Williams alleges he "was moved to a restricted housing unit, under the supervision and order" of Chief of Security Richard Leach; after returning from admission to a secured maximum unit for suicide watch, Mr. Williams "was ushered back to 10B max," by order of Chief Leach; Chief Leach "vehemently flagged [Mr. Williams] off" when Mr. Williams tried to speak to him; Chief Leach denied Mr. Williams access to a haircut; and requested from Chief Leach "his reasoning for keeping plaintiff Williams on F.O.R. (Forever on restriction)."[70] These allegations do not meet the pleading standard of personal involvement necessary to maintain a claim for individual liability under §1983. The allegation "under the supervision of" suggests Mr. Williams is attempting to hold Chief Leach liable on a theory of *respondeat superior*. This does not suffice for civil rights liability.

11

As to Sergeant Carter, Mr. Williams alleges he "donned the red clothing of maximum security, from there on was handcuffed during out of cell activities, via Sgt. Carter"; he signed a "contract via Sergeant Carter, promising his release from confinement"; and on October 20, 2015 Mr. Williams "was moved back to 10D and was informed that this matter will be further investigated, via Sgt. Carter."[71]

Even if we found Mr. Williams sufficiently alleged Chief Leach's and Sergeant Carter's personal involvement in Mr. Williams's housing classification, there is no constitutional deprivation. Transfers to "less amenable and more restrictive custody does not implicate a liberty interest that arises under the Due Process Clause."[72] Pretrial detainees do not have a liberty interest in remaining in the general prison population.[73] Similarly, we find no authority, let alone a clearly established constitutional right, to a haircut. The Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must take 'reasonable measures to guarantee the safety of the inmate.'"[74] We cannot find authority a haircut meets this standard. Nor do we find the failure to provide haircut meets a deprivation of liberty under the Fourteenth Amendment's Due Process Clause applicable to pretrial detainees.

We construe Mr. Williams's allegation regarding Chief Leach's "flagg[ing] off" Mr. Williams as a denial of a type of grievance. As set forth above, there is no constitutionally protected right to the prison grievance process.

Mr. Williams fails to plead a claim against Chief of Security Leach or Sergeant Carter and all claims against them are dismissed.

### *We dismiss claims against Mr. Conley.*

Mr. Williams alleges a denial of "client privilege" when, on April 19, 2016, his "legal

mail" was opened outside his presence "under the supervision of" Mr. Conley.[75] We disagree with the Prison Defendants' argument Mr. Williams does not articulate a valid constitutional right. Mr. Williams articulates a First Amendment right, and in this Circuit, "opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech."[76]

The Third Amended Complaint fails, however, because Mr. Williams does not plead Mr. Conley's personal involvement; he does not allege Mr. Conley directed the actions of anyone in the mail room to open Mr. Williams's mail outside his presence or Mr. Conley actually knew of the actions and acquiesced in them. Instead, there is only the allegation Mr. Williams's mail was opened under Mr. Conley's supervision. Civil rights liability of a prison supervisor cannot attach based only on a supervisory role without pleading personal involvement. We dismiss all claims against Mr. Conley.

### *We dismiss claims against Sergeant Baldwin and Corrections Officer Jenkins.*

Mr. Williams alleges "under the supervision of" or "via" or "under orders of" Corrections Officer Jenkins, he was denied access to speak with a counselor, sergeant, or lieutenant; food was removed from his lunch tray; denied recreation, a change of clothes, phone calls, razors, and commissary; and denied medical care after suffering an anxiety attack.[77] In two paragraphs, Mr. Williams alleges Correctional Officer Jenkins used inflammatory remarks towards him and threatened him with further punishment.[78]

Mr. Williams alleges "under the supervision of" or "via" Sergeant Baldwin, he was denied a dinner meal on three occasions and denied personal property.[79] He also alleges he overheard Sergeant Baldwin tell block workers to starve him.[80] Mr. Williams alleges Sergeant

Baldwin threatened him with bodily harm if he stepped out of camera view.[81]

Threats, verbal abuse and harassment, without more, do not amount to a constitutional violation.[82] Mr. Williams alleges only the use of "inflammatory remarks" and threats of punishment, and nothing more. "[W]ords, no matter how violent or harsh, do[es] not amount to a violation of the prisoner's civil rights by the officer."[83] We dismiss any claim based on allegations of verbal threats and remarks.

Mr. Williams alleges on September 29, September 30, and December 25, 2015, food "was taken off" his meal trays either "under the supervision" of Corrections Officer Jenkins or "under the supervision of" an unidentified "shift Sgt."[84] Mr. Williams alleges either the denial of dinner meals or all meals on September 30, November 6, November 7, November 8, November 9, November 14, November 17, December 19, and December 25, 2015, for a total of seventeen meals in three months, "under the supervision of" Sergeant Baldwin or "under the supervision of all shifts," without identifying who on the shifts allegedly deprived him meals.[85]

The removal of food from trays and deprivation of meals "under the supervision" of unidentified shift sergeants or unidentified persons on "all shifts" is not sufficient to hold Sergeant Baldwin or Corrections Officer Jenkins liable under § 1983. Mr. Williams must allege, with particularity, participation or actual knowledge and acquiescence in the constitutional deprivation. He fails to do so. Similarly, allegations of the removal of food or deprivation of meals "under the supervision of" Corrections Officer Jenkins and Sergeant Baldwin do not allege their participation or actual knowledge and acquiescence to the deprivation.

Even if we construed the "under the supervision" allegations against Corrections Officer Jenkins and Sergeant Baldwin, Mr. Williams alleges deprivations on five occasions between September 30 and December 23, 2015. Our court of appeals recently found the deprivation of

14

three meals over the course of three months "is not of such a magnitude as to rise to the level of a constitutional violation."[86] The denial of food to prisoners may constitute an Eighth Amendment violation where the deprivation is "substantial."[87] Depriving Mr. Williams of 75% of his meals over four days (nine out of twelve) may constitute a systemic serious deprivation.[88] But we do not know who denied the meals. Pleading he "was denied" meals by unknown actors "under the supervision of all shifts" does not suffice.

Mr. Williams alleges Corrections Officer Jenkins, "under [her] orders" or "via c/o Jenkins" denied him access to speak to a counselor, sergeant, or lieutenant on three occasions.[89] To the extent this suggests Corrections Officer Jenkins denied him access to a grievance procedure, we deny any claim because, as set out in our earlier discussion, Mr. Williams does not have a constitutionally protected right to the prison grievance process.[90]

Mr. Williams alleges Corrections Officer Jenkins denied him phone calls, razors, and commissary and Sergeant Baldwin denied him personal property.[91] We construe these allegations as challenging the constitutionality of the conditions of confinement under the Eighth Amendment. Under an Eighth Amendment condition of confinement claim, Mr. Williams must show a "sufficiently serious deprivation that resulted in the denial of 'the minimal civilized measure of life's necessities'" and Prison officials "were 'deliberately indifferent' to Mr. Williams's safety.[92] "'[L]ife's necessities' include 'food, clothing, shelter, sanitation, medical care and personal safety."[93] Deprivations of phone calls,[94] razors, commissary privileges, and personal property, with no other facts surrounding these alleged deprivations are not "sufficiently serious deprivation[s]" resulting in the denial of "the minimal civilized measure of life's necessities" to support any constitutional claims, nor are there any allegation Corrections Officer Jenkins or Sergeant Baldwin were "deliberately indifferent" to Mr. Williams's safety with regard

15

to these deprivations. We dismiss Mr. Williams's § 1983 claims based on these bare bones allegations.

Finally, Mr. Williams asserts he suffered a "panic/anxiety attack" on December 31, 2015 and Corrections Officer Jenkins denied him access to medical care.[95] To establish a violation of his constitutional right to adequate medical care, Mr. Williams must plead (1) a serious medical need, and (2) acts or omissions by prison officials indicating deliberate indifference to the pretrial detainee's need.[96] "[A] medical need is 'serious' for the purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[97] The Third Amended Complaint is devoid of facts supporting this prong of a claim for the denial of medical care.

As to the second prong, deliberate indifference is shown "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs."[98] "In situations involving claims for inadequate medical care, we have found deliberate indifference in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence."[99] Here, we have no facts alleging Corrections Officer Jenkins knew of, and disregarded, an excessive risk to Mr. Williams's health or safety.[100] We accordingly dismiss any claims based on the denial of medical care.

### *We dismiss claims against David Byrne and Cokeda Dunn.*

The Third Amended Complaint is devoid of a fact relating to Defendants Bryne and

Dunn, much less personal involvement in the alleged wrongdoing. Mr. Williams named these individuals in his Second Amended Complaint but does not mention them now. We dismiss claims against them.

### *We dismiss claims against Librarian Dana Keith.*

Mr. Williams alleges the prison librarian Dana Keith denied him access to the courts by withholding pens, paper, and "legal copies" from him. To state a claim for denied access to the courts, Mr. Williams must allege "his efforts to pursue a legal claim were hindered and he suffered injury."[101] Mr. Williams fails to plead Defendant Keith's alleged actions hindered any efforts to pursue a legal claim or injury. We dismiss the claims against Dana Keith.

### III.    Conclusion

In today's accompanying order, we dismiss Mr. Williams's claims, including any state law claims which may arise from the pleaded facts.[102] We find Mr. Williams pleads specific events, some of which may give rise to a constitutional or state law claim, but he does not tell us specifically who harmed him, the specific injury or the legal claim. Given the detailed facts as to events and mindful of our mandate to liberally construe *pro se* allegations, we will grant Mr. Williams leave to file a fourth amended complaint.

---

[1] Mr. Williams first sued the Media, Pennsylvania Sheriff's Department and a Detective Corsi. He then filed an Amended Complaint. The Sheriff's Department and Detective Corsi moved to dismiss the Amended Complaint for failing to state claims against them. After considering Mr. Williams's response to the motion, we dismissed the Amended Complaint without prejudice to Mr. Williams to file another amended complaint consistent with our opinion. We found the Amended Complaint failed to state a municipal liability claim against the Sheriff's Department, in part because the Sheriff's Department is not a municipality for purposes of a § 1983 action. We dismissed the claims against Detective Corsi because we could not, under Federal Rule of Civil Procedure 8, determine the nature of the claims against him.

Mr. Williams then filed a Second Amended Complaint, adding Delaware County as a defendant and dropping as defendants Detective Corsi and the Sheriff's Department. The Prison Board, CEC, and individual defendants, and Delaware County, represented by separate counsel, moved

to dismiss the Second Amended Complaint. Mr. Williams responded to the motions to dismiss the Second Amended Complaint, and also asked for leave to file a Third Amended Complaint. We granted Mr. Williams leave to file a Third Amended Complaint, and denied the pending motions to dismiss without prejudice to be renewed in response to the Third Amended Complaint if warranted. Mr. Williams then filed a Third Amended Complaint in which he pleads more facts, but fails to include legal claims. Mr. Williams is now *pro se* suing David Byrne, John Riley, Jr. Richard Leach, Sergeant App, Sergeant Baldwin, Sergeant Carter, Gloria Jenkins, Eli Hitchens, Dana Keith, Brian Conley, and Cokeda Dunn. Mr. Williams has not served James Hyman, Michael Hellriegel, and Eli Hitchens. Messrs. Hyman, Hellriegel, and Hitchens are no longer employed by the George W. Hill Correctional Facility or by CEC and, under its policy, the Prison will not accept service or original process for former employees. ECF Doc. No. 56.

Delaware County, the Prison Board, CEC, and individual defendants moved to dismiss the Third Amended Complaint. Mr. Williams responded to the motions to dismiss the Third Amended Complaint, referring defendants back to the previous amended complaints. We granted Mr. Williams one last leave to file a Fourth Amended Complaint. Mr. Williams chose not to do so.

---

[2] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our court of appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[we] must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "[we] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[3] ECF Doc. No. 73 (Third Amended Complaint) at ¶ 1. We do not know what is meant by "cert member Walker," and note there are no defendants named Walker or Hillard in this action.

[4] *Id.* at ¶ 2.

[5] *Id.* Mr. Williams identifies this defendant as Hearing Officer "App." Defendants identify this person as Joanne Abt.

[6] *Id.* at ¶ 3.

[7] *Id.* at ¶ 4.

[8] *Id.* at ¶ 5.

[9] *Id.* at ¶¶ 6-7.

[10] *Id.* at ¶ 8.

[11] *Id.* at ¶¶ 9-11.

[12] *Id.* at ¶¶ 12-13.

[13] *Id.* at ¶ 14.

[14] *Id.* at ¶ 15.

[15] *Id.* at ¶ 16.

[16] *Id.* at ¶ 17.

[17] *Id.* at ¶¶ 18-19.

[18] *Id.* at ¶ 20.

[19] *Id.* at ¶ 22.

[20] *Id.* at ¶ 22.

[21] *Id.* at ¶¶ 23-26.

[22] *Id.* at ¶ 27.

[23] *Id.* at ¶¶ 28-30.

[24] *Id.* at ¶ 31.

[25] *Id.* at ¶ 32.

[26] *Id.* at ¶ 33.

[27] *Id.* at ¶¶ 34-40.

[28] *Id.* at ¶ 41.

[29] *Id.* at ¶¶ 42-45.

[30] *Id.* at ¶¶ 46-48, 52.

[31] *Id.* at ¶¶ 49-50.

[32] *Id.* at ¶¶ 51-52.

[33] 436 U.S. 658 (1978).

[34] ECF Doc. Nos. 82, 83.

[35] ECF Doc. No. 82.

[36] *W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996)).

[37] *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)).

[38] *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)); *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3 Cir.), *as amended* (Sept. 16, 2016).

[39] *Barna v. Bd. of Sch. Dir. of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017) (quoting *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005)).

[40] *Sanford v. Stiles*, 456 F.3d 298, 312 (3d Cir. 2006) (citing *Monell*, 436 U.S. at 691).

[41] *Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) (quoting *Graham,* 490 U.S. at 392 n.6) (footnote omitted).

[42] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Bell v. Wolfish*, 441 U.S. 520, 535, n.16 (1979) and *Fuentes v. Wagner*, 206 F.3d 335, 341-42 (3d Cir. 2000)).

[43] *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (citation omitted); *see also Bistrian*, 696 F.3d at 367 (3d Cir. 2012) (quoting *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000) ("[U]nder the Constitution's guarantees of due process, an unsentenced inmate 'is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment'")).

[44] *Santos v. Delaney*, No. 09-3437, 2014 WL 199799, at *5 (E.D. Pa. Jan. 17, 2014) (citing *Simmons v. City of Phila.*, 947 F.2d 1042, 1067 (3d Cir. 1991)).

[45] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

[46] *Monell*, 436 U.S. at 690.

[47] *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 690-91).

[48] *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d. Cir. 2010).

[49] *Simpson v. Ferry*, 202 F. Supp. 3d. 444, 452 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 692-94 and *Buoniconti v. City of Phila.*, 148 F.Supp.3d 425, 435-36 (E.D. Pa. 2015)).

[50] *Bolden v. Southeastern Pennsylvania Transp. Authority*, 21 F.3d 29, 34 (3d. Cir. 1994) (quoting *Carey v. Piphus*, 435 U.S. 247, 98 (1978)).

[51] *Id.* (quoting *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986)).

[52] *Simpson*, 202 F. Supp. 3d at 452.

[53] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[54] *Id.* (quoting *Bryan Cnty.*, 520 U.S. at 409).

[55] ECF Doc. No. 73 at ¶¶ 14, 33.

[56] *Id.* at ¶ 53.

[57] ECF Doc. No. 73 at ¶ 53.

[58] *See* ECF Doc. No. 74. The County additionally seeks to dismiss the Media Sheriff's Department and Detective Corsi. In our November 28, 2017 Order, we dismissed Mr. Williams's claims against Detective Corsi and the Sheriff's Department without prejudice for failure to state a claim. *See* ECF Doc. No. 30. We granted Mr. Williams leave to amend his complaint to state a claim against the County instead. Mr. Williams filed his Third Amended Complaint to "affix" defendants' names to the body of the complaint. He did not name, or make specific claims against, Detective Corsi or the Sheriff's Department in the caption of the Second or Third Amended Complaints. Instead, Mr. Williams "determined that Detective Corsi and Media Sheriff's Department are to reflect the identity and the actions of Delaware County Municipality." *See* ECF Doc. No. 45 at 2. We construe Mr. Williams's statement to mean he is imputing their conduct to the County. Because Mr. Williams adds nothing to his complaint about Detective Corsi or the Sheriff's Department, and for the reasons stated in our November 2017 Memorandum and accompanying order, we clarify Mr. Williams's claims against Detective Corsi and the Sheriff's Department are dismissed with prejudice.

[59] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[60] *Bistrian*, 696 F.3d at 367 (footnote omitted).

[61] *Id.* (citing *Farmer*, 511 U.S. at 834 and *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)).

[62] *Vargas,* 783 F.3d at 974.

[63] *See Elmore*, 399 F.3d at 281 (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

[64] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[65] *Rode*, 845 F.2d at 1207-08.

[66] ECF Doc. No. 73 at ¶ 8.

[67] *Id.* at ¶¶ 1-7.

[68] *Burnside v. Moser*, 138 F.App'x 414, 416 (3d Cir. 2005).

[69] ECF Doc. No. 73 at ¶ 2.

[70] *Id.* ¶¶ 5, 28, 41, 46, 49.

[71] *Id.* at ¶¶ 4, 16, 17.

[72] *Torres v. Fauver*, 292 F.3d 141, 150 (3d Cir. 2002).

[73] *Muslim v. Frame*, 854 F.Supp. 1215, 1227 (E.D. Pa. 1994) (citing *Hewitt v. Helms*, 459 U.S. 460, 469 (1983) and *Martucci v. Johnson*, 994 F.2d 291, 294 (6th Cir. 1991)).

[74] *Farmer*, 511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 57, 526-27 (1984)).

[75] ECF Doc. No. 73 at ¶ 48.

[76] *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006); *Phillips v. Superintendent Chester SCI*, --- F.App'x ---, 2018 WL 3038385, at *5 (3d Cir. June 19, 2018) (per curiam).

[77] ECF Doc. No. 73 at ¶¶ 3, 9, 10, 12, 13, 15, 18, 19, 21, 37, 40, 44.

[78] *Id.* at ¶¶ 6, 42.

[79] *Id.* at ¶¶ 11, 23, 36, 38.

[80] *Id.* at 31.

[81] *Id.* at ¶ 43.

[82] *Aleem-X v. Wescott*, 347 F.App'x 731, 731 (3d Cir. 2009 (per curiam); *Nwani v. Molly*, No. 17-3634, 2018 WL 2461987, at *10 (E.D. Pa. May 3, 2018) (collecting cases); *Jones v. C.O. Repsch*, No. 06-4638, 2007 WL 509960, *2 (E.D. Pa. Feb. 13, 2007) (collecting cases).

[83] *Nwani*, 2018 WL 2461987 at *10 (quoting *Svirbley v. McGinley*, No. 17-2292, 2018 WL 638475, at *3 (M.D. Pa. Jan. 31, 2018)). *See e.g. Richardson v. Sherrer*, 344 F.App'x 755, 757 (3d Cir. 2009) (prison employee's threat to "shut [him] up" if plaintiff was not quiet, without more, does not violate the Eighth Amendment); *Requena v. Roberts*, --- F.3d ---, 2018 WL 3097150, at *7 (9th Cir. June 22, 2018) (§ 1983 retaliation claim based on prison employee calling plaintiff a "dumb Indian" and harassing plaintiff "all night" while in segregation does not constitute adverse action sufficient to support a retaliation claim); *Wingo v. Tenn. Dept. of Corrs.*, 499 F.App'x 454-55) (6th Cir. 2012) (correctional officer calling plaintiff "punk" does not create a constitutional violation).

[84] ECF Doc. No. 73 at ¶¶ 9, 10, 39.

[85] *Id.* at ¶¶ 11, 23-26, 29-30, 38.

[86] *Washington v. Rozich*, --- F.App'x ---, 2018 WL 2446659, at *2 (3d Cir. May 21, 2018) (per curiam) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)) (footnote omitted).

[87] *Lindsey v. O'Connor*, 327 F.App'x 319, 321 (3d Cir. 2009) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)).

[88] Judge Pappert cogently addressed the variety of "food deprivation" allegations which may plead a cognizable claim in *Cadet v. Quigley*, No. 16-2830, 2017 WL 660849, *4 (E.D.Pa. Feb. 16, 2017). Reviewing those cases confirms the pleaded denial of 75% of a prisoner's meals over four days may state as claim based on amount and duration of deprivation. But we need to know who is the individual actor or if the Prison has a policy or custom of systemically denying meals.

[89] ECF Doc. No. 73 at ¶¶ 3, 19, 44.

[90] *Burnside*, 138 F.App'x at 416.

[91] ECF Doc. No. 73 at ¶¶ 36, 37.

[92] *Jones v. Cnty. Jail C.F.C.F.*, 610 F. App'x 167, 168 (3d Cir. 2015) (quoting *Farmer*, 511 U.S. at 834).

[93] *Clemens v. Warden SCI Greene*, 290 F.Supp. 3d 388, 393 (quoting *Griffin v. Vaughn*, 112 F.3d 703, 309 (3d Cir. 1997)).

⁹⁴ Pretrial detainees have a right of access to the courts, which includes telephone calls to counsel under the First, Sixth, and Fourteenth Amendments. *See Randall v. Cnty. of Berks*, No. 14-5091, 2015 WL 5027542, * 17 (E.D. Pa. Aug. 24, 2015). Mr. Williams does not allege the phone calls deprived by Corrections Officer Jenkins impeded Mr. Williams's access to his attorney or caused actual injury.

⁹⁵ *Id.* at ¶ 40.

⁹⁶ *Id.* (citing *Rouse v. Plaintier*, 182 F.3d 192, 197 (3d Cir. 1999)).

⁹⁷ *Mattern v. City of Sea Isle*, 657 F.App'x 134, 138 (3d Cir. 2016).

⁹⁸ *Pearson*, 850 F.3d at 538 (citation omitted).

⁹⁹ *Natale*, 318 F.3d at 582; *Mattern*, 657 F.App'x at 140 (quoting *Natale*, 318 F.3d at 582).

¹⁰⁰ *Mattern*, 657 F.App'x at 140.

¹⁰¹ *Prater v. Wetzel*, 629 F.App'x. 176, 177-78 (3d Cir. 2015) (citing to *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). *See also McKinney v. Nutter*, No. 15-4671, 2017 WL 928373, at *4 (E.D. Pa. Mar. 9, 2017) (to state a claim, a prisoner must show actually injury by demonstrating the deficiencies, or limited access to law library hindered his efforts to pursue a legal claim) (citing *Lewis v. Casey*).

¹⁰² It is possible Mr. Williams may seek a recovery under state law claims for negligent or intentional infliction of emotional distress. At least one Defendant raised this concern. Mr. Williams fails to plead intentional infliction. *Miller v. Comcast*, 724 F.App'x 181, 182 (3d Cir. 2018) (quoting *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982)); *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997). He also fails to plead facts bringing him within the "four factual scenarios" of a negligent infliction of emotional distress claim, and fails to plead the elements of a negligence claim, including actual loss or damage. *Weiley v. Albert Einstein Med. Ctr.,* 51 A.3d 202, 217 (Pa. Super. 2012) (citing *Toney v. Chester Cnty. Hosp.*, 961 A.2d 192, 198 (Pa. Super. 2008)).