## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RASHAD WILLIAMS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **NO. 17-4348** |
| **DELAWARE COUNTY BOARD OF** | : | |
| **PRISON INSPECTORS,** *et al.* | | |

## MEMORANDUM

**KEARNEY, J.**                                                      **September 20, 2018**

Citing many varied incidents beginning shortly after he entered prison before his trial date and then continuing regularly for almost a year, Rashad Williams alleges Delaware County, Delaware County Board of Prison Inspectors, Community Education Centers, Inc., and the superintendent, warden, officers, chaplain and employees of the George W. Hill Correctional Facility deprived him of constitutional rights. Mr. Williams alleges the County, Board of Prisons, and Community Education Centers maintained a policy or custom of housing pre-trial detainees with violent inmates both at the George W. Hill Correctional Facility and at the Delaware County Courthouse. He alleges the individual Defendants deprived him of constitutional rights arising from the conditions of his pre-trial confinement.

All served Defendants move to dismiss the Fourth Amended Complaint.[1] In the accompanying Order, we partially grant the moving Defendants' motion to dismiss. Mr. Williams may proceed on four claims against the moving Defendants: (1) denial of free exercise of religion against Chaplain Dunn; (2) deprivation of food or meals against Officers Jenkins, Baldwin and Paige; (3) housing Mr. Williams with violent inmates against Community Education Centers, Inc. and the Delaware County Board of Prison Inspectors; and, (4) retaliation for his filing a grievance against Officers Jenkins, Baldwin and Paige and Chaplain Dunn.

### I. Allegations.[2]

On May 29, 2015, the Commonwealth incarcerated Mr. Williams at the George W. Hill Correctional Facility as a pretrial detainee.[3]

### *Incidents before September 28, 2015*

Within two days of arriving at the Prison, Chaplain Cokelia Dunn denied Mr. Williams access to religious services on June 1 for "Ta'leem" and "Jumah," and denied him the ability to wear his Kufi outside of his cell.[4] On July 2, the Medical Department denied Mr. Williams medical attention. On July 20, Chaplain Dunn denied Mr. Williams the ability to attend religious services and denied him the ability to wear a Kufi.[5] On August 6, the Medical Department denied Mr. Williams medication an outside physician prescribed for him.[6]

An unidentified actor placed Mr. Williams in the shower on August 25 while Officers Hitchens and Walker "shook his cell down."[7] An unidentified person broke Mr. Williams's eyeglasses.[8] Officers Hillard and Jenkins observed this August 25 incident from the control booth.[9]

On August 30, Chaplain Dunn denied Mr. Williams the ability to wear his Kufi while "on the block (10C)."[10] On September 6, the Medical Department denied Mr. Williams treatment for shortness of breath and chest pains.[11] The next day, an unidentified actor denied Mr. Williams the ability to attend religious services and denied him the ability to wear his Kufi.[12]

On September 16, Officer Hillard issued Mr. Williams a misconduct report for an alleged fight. The same day, Officer Walker notified Mr. Williams of a disciplinary hearing scheduled for September 22 and 23, 2015. Officers Abt and Leach then placed Mr. Williams on "pre-disciplinary detention."[13]

On September 16, the Medical Department denied Mr. Williams treatment for lack of

breathing because he did not have a "treatment order."[14] The next day, Officer Jenkins denied Mr. Williams's request to speak with a counselor.[15] On September 21, Officers Hitchens and Walker and an unidentified actor denied Mr. Williams medication.[16] On September 23, Officer Leach ordered Mr. Williams "handcuffed during out of cell activities (i.e. recreation, shower, medical, attorney visits, etc.)."[17] Officers Abt and Leach denied Mr. Williams a misconduct hearing the same day.[18]

On September 25, Officer Hillard removed Mr. Williams from his cell and moved him to a "restricted housing unit" on Officer Leach's order.[19] The same day, Officers Hitchens and Jenkins used "inflammatory and derogatory remarks" through Mr. Williams's cell intercom.[20] On September 28, Officer Hitchens threatened Mr. Williams with "serious bodily injury" over his cell intercom.[21]

### *Incidents on or after September 28, 2015.*

On September 28, 2015, Mr. Williams, being "scared, afraid, intimidated and fearing for his life," asked Superintendent Riley "to look into these harassments."[22] This is the first plead grievance.

On September 29, a "violent prone inmate block worker/tray runner" took cake from Mr. Williams's food tray while Officers Hitchens and Jenkins "observed, allowed and encouraged" the incident from the control booth window.[23] The next day, a violent inmate worker took hot dogs from Mr. Williams's food tray while Officers Hitchens and Jenkins "observed, allowed and encouraged" from the control booth window.[24] The same day, an unidentified officer and a violent inmate worker denied Mr. Williams his complete dinner meal while Officer Baldwin observed and encouraged the incident from the control both window.[25]

On October 1, Officer Jenkins denied Mr. Williams his hour of recreation.[26] Mr.

Williams told Officer Paige on October 5 his spaghetti smelled like "feces."[27] The same day, Officer Jenkins denied Mr. Williams his hour of recreation.[28]

On October 13, unidentified officers placed Mr. Williams in the "Media (Delaware County Courthouse) Sheriff's holding cell" with "violent prone inmates."[29] An unidentified officer denied Mr. Williams a change of cell after Mr. Williams "quietly explained his protective custody status."[30]

On October 18, Mr. Williams alerted the Medical Department, through non-party Dr. Philips, unidentified actors had denied him meals and his "weight was dropping at an alarming rate."[31]

On October 19, Mr. Williams entered into a "contract" with Officer Carter concerning conditions for release from the "Restricted Housing Unit."[32] The next day, Officer Hillard moved Mr. Williams to protective custody with continued confinement by order of Officer Carter.[33] A week later, Officer Jenkins denied Mr. Williams's inquiry regarding his hour of recreation.[34] On October 29, Officer Jenkins denied Mr. Williams's request to see his counselor through Officer Hillard.[35] The same day, Officer Jenkins denied Mr. Williams's request for a change of clothes through Officer Hillard.[36] Mr. Williams requested an interview the same evening with the Criminal Investigation Division through an unidentified actor.[37] On October 30, Officer Hitchens struck Mr. Williams's cell door during an inmate count, causing Mr. Williams to wake up.[38]

On November 1, Mr. Williams requested to speak with an Imam through Chaplain Dunn and she denied this request to speak with an Imam.[39] The same day, Mr. Williams requested to speak with a psychologist for "depression and anxiety" through an unidentified actor.[40] On November 3, Officer Jenkins denied Mr. Williams's request for a change of clothes through Officer Hillard.[41]

On November 6, Detective Corsi of the Criminal Investigation Division interviewed Mr. Williams at the Delaware County Courthouse.[42] Upon returning to the correctional facility, an unidentified actor placed Mr. Williams in the "Restricted Housing Unit" under Officer Leach's order.[43]

On November 6 and 7, an unidentified officer and "violent prone inmate workers/tray runners" denied Mr. Williams his dinner meals while Officer Baldwin "observed, allowed, and encouraged" the incidents from the control booth window.[44] The next day, an unidentified officer and violent inmate workers denied Mr. Williams all of his meals while Officers Jenkins and Baldwin "observed, allowed, and encouraged" from the control booth window.[45] On the following day, unidentified officers and violent inmate workers denied Mr. Williams lunch and dinner while Officers Jenkins and Baldwin "observed, allowed, and encouraged" from the control booth window.[46] The same day, Officer Jenkins told several "violent prone" inmate block workers to "add [Mr. Williams] to my sh** list," which Mr. Williams interpreted to mean "no meals, no recreation, no showers."[47]

On November 11, an unidentified psychologist evaluated Mr. Williams and admitted him to the Secured Maximum Unit for "suicidal intendancies."[48] Two days later, Officer Leach ordered him back to the Maximum Security Unit.[49] On November 14 and 17, an unidentified officer and "violent prone" block workers denied Mr. Williams meals throughout the day while Officers Jenkins and Baldwin "observed, allowed, and encouraged" the incidents from the control booth window.[50] On November 21, Officer Baldwin ordered a "violent prone" inmate block worker to starve Mr. Williams.[51]

On November 23, Mr. Williams met with his attorney, Joseph Casey, in Philadelphia. Mr. Casey told Mr. Williams he or someone from his office went to the correctional facility on

October 23, November 6, and November 9, 2015 to visit with Mr. Williams.[52] Each time, the Prison denied the visit, ostensibly because Mr. Williams did not want to see Mr. Casey.[53] On November 30, an unnamed sheriff placed Mr. Williams in a maximum security cell with a violent inmate while at the Delaware County Courthouse.[54]

On December 1, Mr. Williams complained to the Health Services Administration about his weight loss, lack of sleep, perturbation duress, and denial of medication.[55] On December 9, an unidentified actor gave Mr. Williams food that smelled like "feces."[56] On December 13, non-party Mr. Barnett informed Mr. Williams of his "administrated custody."[57] The same day, Officer Baldwin denied Mr. Williams's inquiry about his personal property.[58] The next day, Officer Jenkins denied Mr. Williams "a phone call, razor, and commissary privileges."[59] Officer Leach told Mr. Williams a day later he was on "administrative custody" and assured him he would look into "current issues."[60]

On December 19, an unidentified officer and violent inmate workers denied Mr. Williams his evening meal while Officer Baldwin "observed, allowed, and encouraged" the incident from the control booth window.[61] On December 25, violent inmate workers took chicken off Mr. Williams's food tray while an unnamed officer watched and encouraged the incident.[62]

On December 31, an unidentified actor denied Mr. Williams medical treatment after he complained to "staff" of sleep deprivation, dizziness and headaches, and a "massive panic/anxiety attack."[63]

On January 10, 2016, Officer Leach "flagged off" Mr. Williams when he tried to speak with him.[64] On January 13, Officer Jenkins barked at Mr. Williams through his cell intercom, "p***y you really don't want to play with me, you'll be locked in for a week."[65] The same day, Officer Jenkins threatened Mr. Williams with further punishment.[66] On January 20 and 21,

Officer Baldwin threatened Mr. Williams.[67] Officer Jenkins denied Mr. Williams's request to see his counselor on January 21.[68] The same day, Mr. Williams told Officer Leach "he's allowing and perpetuating his staff to violate numerous Constitutional Rights of a pretrial protective custody inmate."[69] Mr. Williams also complained to Warden David Byrne about Officer Jenkins, who denied Mr. Williams access to an attorney on three separate occasions.[70] On January 22, after unnamed officers denied Mr. Williams access to grievance forms, Mr. Williams asked Mr. Swider, the grievance coordinator, for forms.[71]

On March 1, Mr. Williams asked Officer Leach for a haircut.[72] On March 23, Mr. Williams complained through a grievance he has "a protective interest to be in population, and not to be deprived of a misconduct hearing, nor to be locked in F.O.R. (Forever on Restriction)."[73]

On April 11 and 12, Prison librarian Dana Keith denied Mr. Williams legal copies, paper, envelopes, pens, and pencils.[74] On April 19, either an unnamed mailroom clerk or Mail Room Supervisor Conley, opened Mr. Williams's legal mail outside his presence.[75] On April 26, Mr. Williams complained to Officer Leach about F.O.R.[76] On May 11, Mr. Williams asked Superintendent Riley for a "redress of grievance."[77] On October 13, 2016, Mr. Williams complained to CEC of the denial of due process and violation of constitutional amendments.[78]

## II. Analysis

Mr. Williams sues all Defendants for (1) "misuse of force"; (2) denial of religious services; (3) denial of due process; (4) denial of medical treatment; (5) denial of food and meals and (6) "delivered unsanitary food"; (7) denial of release from detention; (8) "housed with violent prone inmates"; (9) denial of counselor visits; (10) harassment; (11) denial of "legal visitation" with his attorney; (12) denial of the "right to petition for a redress of grievance"; (13)

denial of "access of grooming"; (14) denial of access to the courts; (15) denial of "legal mail privacy"; (16) denial of "release from restraints;" and (17) "negligent failure to protect."[79]

Mr. Williams alleges a *Monell*[80] supervisory theory of liability against the Prison Board and CEC based on a policy or custom of housing pre-trial "protective custody inmates" with violent inmates, including a failure to discipline Prison employees for a pattern of abuses and failing to protect him.

Mr. Williams seeks to hold CEC liable, through the conduct of the Prison's "10 Unit Controller" and "mailroom supervisor," for allegedly denying him visits with his attorney and for opening his legal mail outside his presence in retaliation for filing grievances and lawsuits in violation of his state and federal rights.[81]

He seeks injunctive and declaratory relief declaring he never again be housed at the Prison and declaring Defendants violated his Eighth and Fourteenth Amendment rights by failing to protect him from a known risk of harm "and/or potential harm" to his "protective custody status" by housing him with violent inmates; Chaplain Cokelia Dunn violated his First Amendment right to practice his religion; the "Medical Department" violated his right under the Eighth and Fourteenth Amendments to medical care; Officers Leach and Abt violated his Fourteenth Amendment right to a due process hearing; Officers Jenkins, Hitchens, and Baldwin violated his Fifth, Eighth, and Fourteenth Amendment rights by denying him meals, showers, and recreation; Officer Hitchens violated his Fifth and Fourteenth Amendment rights by destroying his eye glasses; and, Librarian Keith and Mail Room Supervisor Conley violated his Sixth Amendment right by denying him access to the courts. He also seeks compensatory and punitive damages against all Defendants.

The Board, CEC, and the served individual Defendants move to dismiss the Fourth

8

Amended Complaint with prejudice. We address each claim in the Fourth Amended Complaint, but first address Defendants' argument the statute of limitations bars all claims occurring before September 28, 2015.

### A. Mr. Williams's claims based on events occurring before September 28, 2015 are barred by the statute of limitations.

Defendants argue claims based on events before September 28, 2015 are barred by the statute of limitations for a § 1983 claim.[82] Defendants contend the statute of limitations bars claims, at least in part, based on the denial of religious services; medical treatment; disciplinary hearing; and destruction of property.

We apply Pennsylvania's two-year statute of limitation for personal injury actions to Mr. Williams's § 1983 claims.[83] Mr. Williams sued on September 28, 2017. He now alleges constitutional deprivations beginning on June 1, 2015 and continuing to May 2016. Events from June 1 to September 27, 2015 occurred more than two years before Mr. Williams sued on September 28, 2017. While Mr. Williams argues we should toll the statute of limitations for these events because he was exhausting his administrative remedies, he fails to allege attempts to exhaust remedies for these events.

The statute of limitations bars two of Mr. Williams's claims in their entirety: "misuse of force" for a "shakedown" of his cell causing his glasses to break on August 25, 2015[84] and the denial of access to a hearing on September 22 and 23, 2015.[85] The remaining claims are limited to events occurring on or after September 28, 2015.

We grant Defendants' motion to dismiss claims based on events occurring before September 28, 2015, including his claims for breaking his glasses and denying access to hearings on September 22 and 23, 2015.

**B.  We grant in part and deny in part Defendants' Motion to Dismiss.**

**1.  We deny Defendants' motion to dismiss the claim for denial of free exercise of religion.**

Mr. Williams alleges the denial of access to religious services and religious garb on June 1 and 6; July 20 and 30; and September 7, 2015.[86]  Mr. Williams also alleges a denial to speak with an Imam on November 1, 2015.[87] He specifically alleges he requested to speak with an Imam "through request to staff to Chaplin Cokelia Dunn."[88] Mr. Williams further alleges an unidentified person allowed other "similarly situated" prisoners to practice their religion.[89]

To state a claim under § 1983 against an individual, Mr. Williams must show the defendant, acting under color of law, violated his federal constitutional or statutory rights, and caused the complained of injury.[90] Mr. Williams must allege the individual defendant's "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operations of respondeat superior."[91] "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity."[92]

The First Amendment affords a prisoner a "reasonable opportunity" to exercise his religion.[93] To plead a claim for free exercise under the First Amendment, Mr. Williams must allege Defendants' denial of religious exercise "was not reasonably related to the prison's legitimate penological interests in security."[94]

Defendants argue Mr. Williams fails to "specifically identify the individuals who allegedly . . . denied [Mr. Williams] access to a 'Muslim chaplain.'"[95]

We disagree with Defendants. Mr. Williams alleges Chaplain Dunn's personal involvement in denying him access to an Imam. Because Mr. Williams alleges "similarly situated" prisoners were capable of religious practice, we find Mr. Williams sufficiently pleads the denial of religious exercise by Chaplain Dunn was not "reasonably related" to penological

interests in security. We deny Defendants' motion to dismiss Mr. Williams's claim for denial of religious services on November 1, 2015. We may revisit this issue after discovery.

### 2. We dismiss Mr. Williams's claim for denial of medical treatment.

Mr. Williams alleges the denial of medical treatment on July 2 and 11; August 6; September 5, 17, and 21; October 18; November 9; December 1 and 31, 2015.[96] On December 1, 2015, Mr. Williams complained to "staff (Health Services Administration)" about his "significant weight loss, lack of sleep, perturbation duress, and about nurses saying [Mr. Williams's] medication was 'NOT on the cart.'"[97] Mr. Williams alleges on December 31, 2015, he suffered from "sleep deprivation, dizziness and headaches, [and] a massive panic/anxiety attack" but was denied pertinent medical attention.[98]

For the events occurring after September 28, 2015, we construe his claim as one for the denial of a constitutional right to adequate medical care. Mr. Williams must plead (1) a serious medical need, and (2) acts or omissions by prison officials indicating deliberate indifference to his need.[99] "[A] medical need is 'serious' for the purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'"[100] To constitute a serious medical need, the condition must be such that "a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death."[101]

As to the second prong, deliberate indifference is shown "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs."[102] While it is possible Mr. Williams has

alleged a "serious medical need,"[103] he fails to identify a specific individual involved in denying his requests for medical treatment. Mr. Williams only identifies the "Medical Department" and non-party "Dr. Philips."[104] He thus fails to show "personal involvement" of an individual defendant as required under § 1983.

In suing CEC and the Prison Board on a supervisory liability theory, Mr. Williams must plead "(1) [he] possessed a constitutional right of which [he] was deprived; (2) the [CEC or the Prison Board] had a policy [or custom]; (3) the policy [or custom] 'amount[ed] to deliberate indifference' to [his] constitutional right; and (4) the policy [or custom] was the 'moving force behind the constitutional violation.'"[105]

After four attempts, Mr. Williams fails to plead a "policy" or "custom" amounting to deliberate indifference to his right to adequate medical care. We grant Defendants' motion to dismiss Mr. Williams's claim for denial of medical treatment.

### 3. Mr. Williams states a claim for denial of food or meals.

Mr. Williams alleges Officers Hitchens, Jenkins, and Baldwin deprived him of meals either through the removal of food from his trays or the denial of entire meals on eleven occasions between September 29, 2015 and December 19, 2015.[106]

Relying on *Duran v. Merline*,[107] Defendants argue eleven incomplete or missing meals over a three month period does not create a constitutional violation as a matter of law. Defendants argue Mr. Williams fails to specifically identify who allegedly deprived him of meals. We disagree with Defendants. First, the court decided *Duran v. Merline* on a motion for summary judgment, not on a motion to dismiss. Second, *Duran* is factually distinguishable. The court found the plaintiff, a pre-trial detainee, failed to satisfy the objective standard—"[w]hether the deprivation of food falls below this [constitutional] threshold depends on the duration of the

deprivation"—because being served cold meals for a period of 45-days is not "punishment" under the Fourteenth Amendment's due process clause applied to pre-trial detainees.[108] The court found "the mere fact [food] is unvaried or cold does not give rise to a constitutional violation" so long as the food is nutritionally adequate.[109] But the prisoner did not allege the defendants deprived him of meals.

Mr. Williams complains about the denial of food in its entirety; in some cases, for consecutive days. The denial of food to prisoners may constitute an Eighth Amendment violation where the deprivation is "substantial."[110] Over a four day period, Mr. Williams alleges the denial of dinner meals on November 6 and 7; all meals on November 8; and two meals on November 9, 2015.[111] Accepting these allegations as true, in addition to allegations of the deprivation of food on seven other occasions, Officers Hitchens, Jenkins, and Baldwin allegedly deprived Mr. Williams of sixty percent of his meals over four days and may constitute a systemic serious deprivation.[112] This is not a case alleging the deprivation of a single meal, which does not rise to the level of a constitutional violation.[113]

Mr. Williams alleges weight loss as a result of being denied meals, and he communicated his concern to non-party Dr. Philips at the Prison's medical department.[114] He also alleges on November 6, 2015, he went to the Delaware County Courthouse for an interview with Detective Corsi of the Criminal Investigation Unit and, on his return to the Prison, Officer Leach ordered him to a restricted housing unit.[115] Mr. Williams alleges the same day – November 6 – and through November 9, 2015 the deprivation of meals entirely or in part by "violent prone inmate workers/tray runners" which Officer Baldwin and, on other occasions, Officer Jenkins "observed, allowed, and encouraged" while witnessing events from the control booth window.[116] This is relevant to Mr. Williams's allegation of punishment in retaliation for filing grievances.[117]

13

Taking all these allegations as true, and construing them liberally, we find Mr. Williams plausibly states a claim for deprivation of food against the moving Defendants possibly falling below the Eighth Amendment's threshold. We deny Defendants' motion on this basis.

### 4. We deny Defendants' motion to dismiss the claim for delivery of "unsanitary food."

Mr. Williams alleges unnamed actors brought him unsanitary food on October 5, 2015 and December 9, 2015.[118] On October 5, Mr. Williams told Officer Paige about the condition of his food.[119] His claim is one for deprivation of meals under the Eighth Amendment.[120] As we allow Mr. Williams to proceed on his claim for deprivation of food, his allegations of unsanitary food is relevant to this claim at least as to Officer Paige subject to *in limine* motions on the proof or damages. To the extent we liberally consider this allegation to raise a different claim, we deny Defendant's motion to dismiss claims for delivery of unsanitary food against Officer Paige.

### 5. We dismiss Mr. Williams's claim for denial of release from detention.

Mr. Williams alleges Officers Abt and Leach denied his release from "F.O.R. (Forever on Restriction)" from September 16, 2015 to May 13, 2016.[121] Mr. Williams further alleges on September 16, 2015, (1) Officer Hillard issued him a misconduct report, (2) Officer Walker notified him of a hearing to convene on September 22 and 23, and (3) Officers Abt and Leach placed him on "pre-disciplinary detention (segregation)."[122]

For detention occurring on and after September 28, 2015, we liberally read Mr. Williams's claim as one for deprivation of liberty under the Due Process clause of the Fourteenth Amendment.[123] While he does not have a constitutional right to be housed in the general prison population, Mr. Williams has a liberty interest in not being detained indefinitely in restrictive confinement without explanation or review of his confinement.[124]

Mr. Williams alleges Officers Abt and Leach placed him on "pre-disciplinary detention" on September 16, 2015.[125] He further alleges the detention lasted until May 13, 2016.[126] He fails to allege Officers Abt and Leach denied him an explanation or review of his confinement in pre-disciplinary detention.

Since Mr. Williams fails to allege a constitutional violation, he fails to state a claim for deprivation of liberty. We grant Defendants' motion to dismiss Mr. Williams's claim for denial of release from detention.

### 6. Mr. Williams states claims against the Prison Board and CEC for housing him with violent inmates and failure to discipline.

Mr. Williams sues the Prison Board and CEC alleging they had an "unwritten" policy, practice, and custom of housing or holding pre-trial "protective custody inmates" with violent inmates both at the Prison and Delaware County Courthouse, and includes a claim for *Monell* liability for failure to discipline Prison employees for their conduct.[127] We understand Mr. Williams is alleging the County, Prison Board, and CEC have a policy or custom of holding pre-trial "protective custody" detainees with violent prone inmates[128] *and* a claim the Prison Board and CEC failed to discipline its employees, alleging they failed to "curb the pattern of misconduct" and "known pattern of psychological abuse and physical deprivation."[129]

The Prison Board and CEC challenge only Mr. Williams's "failure to train" claim, arguing the Fourth Amended Complaint lacks "detailed factual allegations of the existence of a policy and/or custom of deliberate indifference," including the denial of medical care. The Prison Board and CEC argue Mr. Williams fails to plead examples of past analogous conduct, and a single incident of unconstitutional activity is insufficient to impose liability for failure to train under *Monell*.

To plead municipal liability under *Monell*, Mr. Williams must allege "(1) [he] possessed

a constitutional right of which [he] was deprived; (2) the municipality had a policy [or custom]; (3) the policy [or custom] 'amount[ed] to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy [or custom] was the 'moving force behind the constitutional violation.'"[130] Mr. Williams alleges CEC and the Prison Board violated his Fifth, Eighth, and Fourteenth Amendment rights to be free from inmate violence; the Prison Board and CEC have a policy or custom of holding pre-trial "protective custody" detainees with violent prone inmates depriving him of his constitutional rights; the Prison Board and CEC knew Mr. Williams's status as a protective custody detainee and knew of violent prone inmates but nonetheless "mix[ed] him in" with violent prone inmates with deliberate indifference; knew such a policy would pose a substantial risk to his health and safety and acquiesced to it; and, the policy caused emotional distress having been subjected to "continuous[s] psychologica[l] abus[e] and subjected to not only sexual predation but also ceded to verbal insults."[131]

The Eighth Amendment's cruel and unusual punishment clause imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."[132] Mr. Williams has a "clearly established constitutional right to have prison officials protect him from inmate violence."[133] At the pleading stage, Mr. Williams plausibly alleges a policy or custom of housing pre-trial protective custody detainees with violent prone inmates in violation of his constitutional right to be free from inmate violence.[134] To the extent the Prison Board and CEC move to dismiss for failing to allege a custom or policy, we deny the motion.

We next turn to Mr. Williams's failure to discipline claim. A failure to train, supervise, or discipline municipal employees may be actionable under *Monell* "[o]nly where the failure . . . amounts to deliberate indifference" to the rights of others to be considered a "policy or custom" under § 1983.[135] To prove failure to discipline amounted to deliberate indifference, Mr.

16

Williams must plead "(1) policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[136] If policymakers "are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."[137] A "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."[138]

Mr. Williams alleges CEC "failed to discipline or curb the known pattern of psychological abuses and physical deprivation" by the individual Defendants.[139] As noted, Mr. Williams has sufficiently plead constitutional violations against the individual Defendants. Mr. Williams further alleges CEC knew of these violations and failed to take disciplinary action against Defendants. We deny Defendants' motion to dismiss Mr. Williams's claim for failure to discipline.

### 7. We dismiss Mr. Williams's claim for denial of counselor visits.

Mr. Williams alleges Officer Jenkins denied him access to a counselor on September 17, 2015; October 29, 2015; and January 21, 2016.[140] Mr. Williams alleges Officer Jenkins denied his request to see a counselor on October 29 through block officer "Hillard."[141] Officer Jenkins similarly denied his request on January 21 to see his counselor through officer "John Doe."[142]

Interpreting Mr. Williams's allegation as denial of access to a psychiatric counselor/therapist on October 29, 2015 and January 21, 2016, we read Mr. Williams's claim as one for denial of adequate medical care. As noted, to state a claim for denial of adequate medical care, Mr. Williams must allege a "serious medical need."[143] He fails to do so.[144] Because Mr.

Williams fails to allege a "serious medical need," he fails to state a claim for denial of adequate medical care. We grant Defendants' motion to dismiss Mr. Williams's claim for denial of "counselor visits."

### 8. We dismiss Mr. Williams's claims for harassment as they do not rise to the level of a constitutional violation.

Mr. Williams alleges Officers Hitchens, Jenkins, and Baldwin harassed him on August 25, 2015; September 25 and 28, 2015; October 30, 2015; November 9 and 21, 2015; and January 13, 20, and 21, 2016.[145] Defendants argue Mr. Williams's claims based on harassment fail as a matter of law because they are not constitutional violations and not actionable under § 1983. Mr. Williams alleges harassment on nine separate days by corrections officers.[146] He specifically alleges Officer Eli Hitchens and non-party "C.E.R.T. Officer Walker" "trashed" his cell, breaking his glasses; Officer Hitchens threatened him over his cell intercom; Officer Hitchens disturbed his sleep by banging on his cell door while doing an inmate count; Officer Jenkins "stormed on" to a unit and "slammed the door," telling "violent prone block workers/tray runners" to add him to her "sh** list too"; he overheard Officer Baldwin tell a violent prone inmate block worker/tray runner to "starve" him; Officer Jenkins again "stormed on the block" and threatened him with further punishment; and, Officer Baldwin threatened him with bodily injury.[147]

Threats, verbal abuse and harassment, without more, do not amount to a constitutional violation.[148] Mr. Williams alleges only the use of "inflammatory remarks" and threats of punishment, and nothing more. "[W]ords, no matter how violent or harsh, do not amount to a violation of the prisoner's civil rights by the officer."[149] We dismiss claims based on allegations of verbal threats and remarks.

Defendants argue claims against Officers Jenkins and Baldwin for threats fail as a matter

of law and must be dismissed. Mr. Williams's claims of harassment are based, in part, on threats allegedly made by Officers Jenkins and Baldwin. Officers Hitchens has not moved for relief on this ground.

We dismiss claims based on threats allegedly made by Officers Jenkins and Baldwin because they do not, without more, amount to a constitutional violation.

### 9. We dismiss Mr. Williams's claims based on a denial of "legal visitation."

Mr. Williams alleges Officer Jenkins denied him visits from his attorney on October 23, November 6, and November 9, 2015.[150] To state a claim against an individual for denial of attorney visits, Mr. Williams must allege an "actual injury" to his litigation efforts resulting from the denial of attorney visits.[151] Mr. Williams fails to allege any "actual injury."

Mr. Williams alleges CEC denied him visitation with his attorney.[152] As discussed, to state a claim against CEC, Mr. Williams must allege a "policy" or "custom" amounting to "deliberate indifference" to his constitutional rights.[153] After four attempts, Mr. Williams fails to allege facts establishing a "policy" or "custom."

We grant Defendants' motion to dismiss Mr. Williams's claim for denial of "legal visitation."

### 10. We grant in part and deny in part Defendants' motion to dismiss Mr. Williams's claim for retaliation for filing grievances.

Mr. Williams alleges CEC, through the "mailroom supervisor," retaliated against him for filing grievances by opening his "legal mail" outside of his presence.[154] To allege a claim against CEC, Mr. Williams must allege a "policy" or "custom" amounting to "deliberate indifference" to Mr. Williams's constitutional rights.[155] Mr. Williams fails to allege a "policy" or "custom" of a prisoner's legal mail outside of his presence in retaliation for filing grievances. We dismiss Mr.

Williams's claim for retaliation against CEC.

In a separate paragraph, Mr. Williams claims retaliation against all Defendants. He alleges the conditions he suffered "amounted to punishing and was done in retaliation for filing grievances."[156] To state a claim for retaliation, Mr. Williams must allege "(1) that he was engaged in constitutionally protected conduct; (2) that he suffered an adverse action at the hands of prison officials, sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected activity was a motivating factor in the adverse action taken against him."[157]

We construe Mr. Williams as alleging he submitted a grievance on September 28, 2015.[158] Mr. Williams alleges he "submitted a request to Superintendent John Riley Jr" to look into Defendants' harassments after being "scared, afraid, intimidated and fearing for his life."[159] Our court of appeals decided "the filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity[.]"[160] Officers Hitchens, Jenkins, and Baldwin then either partially or entirely denied Mr. Williams meals on eleven occasions between September 29 and December 19, 2015.[161] Officer Paige knew of an unsanitary meal on October 5, 2015. Chaplain Dunn allegedly denied him the free exercise of religion on November 1, 2015.

The question is timing: did individuals engage in these acts to retaliate for the September 28, 2015 grievance. Whether the protected activity on September 28, 2015 is a motivating factor can be shown by demonstrating "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action."[162] Mr. Williams alleges constitutional deprivations in October and November 1, 2015. We cannot dismiss the possible temporal proximity without discovery.

As noted regarding his claim for denial of meals, Mr. Williams alleges a "substantial"

deprivation of food based on these occurrences and the denial of the free exercise of his religion within weeks of his grievance. This deprivation would deter a person of ordinary firmness from exercising his right. Mr. Williams states a claim for retaliation through denying food and meals and the free exercise of religions for filing grievances.[163]

We deny Defendants' motion to dismiss this claim against Officers Jenkins, Baldwin and Paige and Chaplain Dunn.

### 11. We dismiss Mr. Williams's claim for denial of the "right to petition for a redress of grievances."

Mr. Williams alleges a denial of access to grievances on January 22, 2016 and May 11, 2016.[164] He alleges he asked grievance coordinator Mr. Swider on January 22 for grievance forms because unnamed correctional officers on his unit denied giving him the forms, and he asked for a "redress of grievance" from Superintendent Riley on May 11.[165] Although he has a constitutional right to seek redress of grievances, Mr. Williams is not guaranteed a prison official will address those grievances.[166]

Mr. Williams alleges unnamed correctional officers denied him "grievance forms," but he did have access and submitted a request for forms through Mr. Swider, the grievance coordinator. While Mr. Williams alleges unnamed officers and Superintendent Riley denied access to the grievance procedure, he also alleges he "complain[ed] through grievance" regarding his custody.[167] It appears Mr. Williams alleges Defendants failed to redress his grievances, rather than denying access to the grievance process altogether. Mr. Williams does not have a constitutional right to have his grievances addressed.[168] We grant Defendants' motion to dismiss Mr. Williams's claim for denial of the right to petition for a redress of grievances.

### 12. We dismiss Mr. Williams's claims based on a denial of access to grooming.

Mr. Williams alleges he was "denied access to grooming" on March 1, 2016. We find no authority guaranteeing Mr. Williams a constitutional right to grooming. Mr. Williams, after four attempts, does not allege how his lack of grooming rises to an unconstitutional condition of confinement. We might imagine facts which could give rise to this claim but they are not plead after four attempts. We grant Defendants' motion to dismiss this grooming claim.

### 13. We dismiss Mr. Williams's claim against Librarian Keith for denial of access to the courts.

Mr. Williams alleges Dana Keith, the Prison librarian, denied him "legal copies," papers, envelopes, pencils and pens on April 11 and 12, 2016.[169] Defendants argue the claims against Librarian Keith for denial of access to the courts must be dismissed for failure to plead actual injury.

To state a claim for denial of access to the courts, Mr. Williams must allege "his efforts to pursue a legal claim were hindered and he suffered injury."[170] Mr. Williams must allege he suffered either: (1) an "actual injury" in that he lost a chance to pursue a nonfrivolous claim or (2) he has no other remedy that may be awarded as recompense for the claim other than the present denial of access suit.[171]

Mr. Williams fails to plead either actual injury or lack of an alternative remedy. We dismiss his claim against Librarian Keith for denial of access to the courts.

### 14. We dismiss Mr. Williams's claim for denial of privacy of legal mail.

Mr. Williams alleges either an unnamed actor or Mail Room Supervisor Conley denied him "privacy of legal mail" on April 19, 2016.[172] He alleges one of those actors opened his legal mail outside of his presence.[173]

While a prison official violates a prisoner's First Amendment right by opening his legal mail outside of his presence, our court of appeals decided a single instance of interference with an inmate's legal mail is not sufficient to allege a violation of First Amendment rights.[174] Since Mr. Williams fails to allege a constitutional violation, we dismiss his claim for denial of privacy of legal mail.

### 15. We dismiss Mr. Williams's claim for denial of release from restraints.

Mr. Williams alleges Officer Leach denied him "release from restraints" from September 23, 2015 to May 13, 2016.[175]

For events on or after September 28, 2015, we read Mr. Williams's claim as one for deprivation of liberty under the Due Process Clause.[176] "Prisoners typically have a protected liberty interest only in 'freedom from restraint' that 'imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"[177]

Mr. Williams alleges Officer Leach ordered him "handcuffed during out of cell activities (i.e. recreation, shower, medical, attorney visits, etc.)."[178] Mr. Williams fails to allege facts showing this treatment imposed an atypical or significant hardship when compared to the ordinary incidents of prison life.[179] Mr. Williams offers no comparison. We cannot guess as to whether this treatment is typical for the Prison. As he fails to sufficiently allege a constitutional violation, we dismiss Mr. Williams's claim for denial of release from restraints.

### 16. We dismiss Mr. Williams's claim for negligent failure to protect.

Mr. Williams alleges a "negligent failure to protect" claim, alleging all Defendants owed him, as a pre-trial protective custody plaintiff, a duty of care to protect him from "mental, physical, and emotional abuse by violent prone inmates and vindictive correctional officers, etc."[180] Mr. Williams alleges all Defendants breached their duty by failing to provide him

protection after he complained and filed grievances, and the breach of their duty resulted in "serious physical deprivation of meals, medical treatment, attorney visits, etc., emotional distress, damage to personal property (destroyed glasses)."[181] Defendants move to dismiss the claim, arguing there is no duty under Pennsylvania law to protect third persons except under limited circumstances not applicable here.

To the extent Mr. Williams attempts to assert a civil rights claim for negligent conduct by the Prison Board and CEC, we will dismiss it as duplicative of his *Monell* claim. The Eighth Amendment's cruel and unusual punishment clause imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners."[182] Mr. Williams has a "clearly established constitutional right to have prison officials protect him from inmate violence."[183] But negligent conduct causing injury to an inmate is not a constitutional violation actionable under § 1983.[184] Deliberate indifference is required for actionable conduct under § 1983.[185]

Mr. Williams plausibly alleges a § 1983 claim based on *Monell* liability against the Prison Board and CEC for its alleged policy of holding pre-trial protective custody inmates with violent inmates.

III.    **Conclusion**

In today's accompanying order, we grant in part and deny in part the motion of the Board of Prison Inspectors, CEC, and the individual Defendants to dismiss Mr. Williams's Fourth Amended Complaint. We grant Defendants' motion to dismiss claims based on events occurring before September 28, 2015 as barred by the statute of limitations. For events occurring on or after September 28, we deny Defendants' motion with respect to Mr. Williams's claims for (1) denial of free exercise of religion against Chaplain Dunn; (2) deprivation of food or meals against Officers Jenkins, Baldwin, and Paige; (3) housing Mr. Williams with violent inmates

against CEC and the Prison Board; (4) and, retaliation for filing the September 28, 2015 grievance against Officers Jenkins, Baldwin and Paige and Chaplain Dunn. We dismiss all other claims against the moving Defendants.

---

[1] Mr. Williams sues Delaware County, Delaware County Board of Prisons ("Prison Board"), Community Education Centers, Inc. ("CEC"), and individuals David Byrne, John Riley, Jr., Richard Leach, Joanne Abt, Geoffrey Baldwin, Philip Carter, Gloria Jenkins, Dana Keith, Brian Conley, and Cokelia Dunn, as well as unserved defendants James Hyman, Michael Hellriegel, and Eli Hitchens. Delaware County, represented by separate counsel, moved to dismiss the Fourth Amended Complaint, arguing it fails to state a claim for *Monell* liability. We denied the County's motion. *See* ECF Doc. No. 97. We only address the motion filed by the remaining served Defendants. James Hyman, Michael Hellriegel, and Eli Hitchens recently moved to strike service of process upon them. ECF Doc. No. 106. They are no longer employed by the George W. Hill Correctional Facility (the "Prison") or CEC and, under its policy, the Prison will not accept service of original process for former employees. See ECF Doc. No. 56. Mr. Williams must answer their motion no later than October 2, 2018.

[2] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our court of appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[we] must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "[we] should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[3] Fourth Amended Complaint at p. 4, ¶ 1 (ECF Doc. No. 88).

[4] *Id.* at p. 4, ¶ 2.

[5] *Id.* at p. 4, ¶ 4.

[6] *Id.* at p. 4, ¶ 5.

[7] *Id.* at p. 4, ¶ 6. Mr. Williams did not sue Officer Walker.

[8] *Id.* at p. 4, ¶ 6.

[9] *Id.* at p. 4, ¶ 6. Mr. Williams did not sue Officer Hillard.

[10] *Id.* at p. 5, ¶ 7.

[11] *Id.* at p. 5, ¶ 8.

[12] *Id.* at p. 5, ¶ 9.

[13] *Id.* at p. 5, ¶ 10.

[14] *Id.* at p. 5, ¶ 11.

[15] *Id.* at p. 5, ¶ 12.

[16] *Id.* at p. 6, ¶ 13.

[17] *Id.* at p. 6, ¶ 14.

[18] *Id.* at p. 6, ¶ 15.

[19] *Id.* at p. 6, ¶ 16.

[20] *Id.* at p. 6, ¶ 17.

[21] *Id.* at p. 6, ¶ 18.

[22] *Id.* at p. 7, ¶ 19.

[23] *Id.* at p. 7, ¶ 20.

[24] *Id.* at p. 7, ¶ 21.

[25] *Id.* at p. 7, ¶ 22.

[26] *Id.* at p. 7, ¶ 23.

[27] *Id.* at p. 7, ¶ 24.

[28] *Id.* at p. 8, ¶ 25.

[29] *Id.* at p. 8, ¶ 26.

[30] *Id.* at p. 8, ¶ 26.

[31] *Id.* at p. 8, ¶ 27.

[32] *Id.* at p. 8, ¶ 28.

[33] *Id.* at p. 8, ¶ 29.

[34] *Id.* at p. 8, ¶ 30.

[35] *Id.* at p. 9, ¶ 31.

[36] *Id.* at p. 9, ¶ 32.

[37] *Id.* at p. 9, ¶ 33.

[38] *Id.* at p. 9, ¶ 34.

[39] *Id.* at p. 9, ¶ 35.

[40] *Id.* at p. 9, ¶ 36.

[41] *Id.* at p. 9, ¶ 37.

[42] *Id.* at p. 10, ¶ 38.

[43] *Id.* at p. 10, ¶ 38.

[44] *Id.* at p. 10, ¶¶ 39-40.

[45] *Id.* at p. 10, ¶ 41.

[46] *Id.* at p. 11, ¶ 42.

[47] *Id.* at p. 11, ¶ 43.

[48] *Id.* at p. 11, ¶ 44.

[49] *Id.* at p. 11, ¶ 45.

[50] *Id.* at pp. 11-12, ¶¶ 46-47.

[51] *Id.* at p. 12, ¶ 48.

[52] *Id.* at p. 12, ¶ 49.

[53] *Id.* at p. 12, ¶ 49.

[54] *Id.* at p. 12, ¶ 50.

[55] *Id.* at p. 13, ¶ 51.

[56] *Id.* at p. 13, ¶ 52.

[57] *Id.* at p. 13, ¶ 53.

[58] *Id.* at p. 13, ¶ 53.

[59] *Id.* at p. 13, ¶ 54.

[60] *Id.* at p. 13, ¶ 55.

[61] *Id.* at p. 13, ¶ 56.

[62] *Id.* at p. 14, ¶ 57.

[63] *Id.* at p. 14, ¶ 58.

[64] *Id.* at p. 14, ¶ 59.

[65] *Id.* at p. 14, ¶ 60.

[66] *Id.* at p. 14, ¶ 61.

[67] *Id.* at p. 14-15, ¶¶ 62, 64.

[68] *Id.* at p. 15, ¶ 63.

[69] *Id.* at p. 15, ¶ 65.

[70] *Id.* at p. 15, ¶ 65.

[71] *Id.* at p. 15, ¶ 66.

[72] *Id.* at p. 15, ¶ 67.

[73] *Id.* at p. 15, ¶ 68.

[74] *Id.* at p. 16, ¶ 69-70.

[75] *Id.* at p. 16, ¶ 71.

[76] *Id.* at p. 16, ¶ 72.

[77] *Id.* at p. 16, ¶ 73.

[78] *Id.* at p. 16, ¶ 74.

[79] *Id.* at pp. 16-31, 40

[80] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

[81] ECF Doc. No. 88 at p. 32, ¶¶ 4-5.

[82] Although the statute of limitations is an affirmative defense required to be plead in an answer, it may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under the "Third Circuit Rule," the statute of limitations may be raised in a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002).

[83] *Mumma v. High-Spec, Inc.*, 400 F. App'x 629, 631 (3d Cir. 2010).

[84] ECF Doc. No. 88 at p. 4, ¶ 6; p. 16, at ¶ 1.

[85] *Id.* at pp. 5-6, ¶¶ 10, 15; p. 18, ¶ 1.

[86] *Id.* at p. 17, ¶ 1-3. Any claim based on events occurring before September 28, 2015 is barred by the statute of limitations.

[87] *Id.* at p. 17, ¶ 4.

[88] *Id.* at p. 9, ¶ 35.

[89] *Id.* at p. 17, ¶ 4.

[90] *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998)).

[91] *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

[92] *Rode*, 845 F.2d at 1207-08.

[93] *Cruz v. Beto*, 405 U.S. 319, 322 (1972).

94 *Dunn v. Sec'y Pennsylvania Dep't of Corr.*, 490 F. App'x 429, 431 (3d Cir. 2012) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

95 ECF Doc. No. 94 at p. 12.

96 ECF Doc. No. 88 at p. 21, ¶ 1. Claims for denial of treatment based on events before September 28, 2015 are barred by the statute of limitations.

97 *Id.* at p. 13, ¶ 51.

98 *Id.* at p. 14, ¶ 58.

99 *Randall v. Cty. of Berks*, No. 14-5091, 2015 WL 5027542, at *10 (E.D. Pa. Aug. 24, 2015) (citing *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987)).

100 *Randall*, 2015 WL 5027542, at *11.

101 *Id.* (quoting *Tsakonas v. Cicchi*, 308 F. App'x 628, 632 (3d Cir. 2009)).

102 *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017).

103 *See Cruz v. Med. Dep't Staff*, No. 14-4078 MAS, 2014 WL 6884246, at *3 (D.N.J. Dec. 4, 2014) (finding that allegations of "headache pain and dizziness" was not sufficient to demonstrate a "serious medical need"); *but see Tapp v. Proto*, 718 F. Supp. 2d 598, 623 (E.D. Pa.), *aff'd*, 404 F. App'x 563 (3d Cir. 2010), and *aff'd*, 404 F. App'x 563 (3d Cir. 2010) (finding prisoner's "weight loss problems could be considered a serious medical need").

104 ECF Doc. No. 88 at p. 5, ¶ 8; p. 8, ¶ 27.

105 *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

106 ECF Doc. No. 88 at p. 22, ¶¶ 1-2.   Officer Hitchens is not moving to dismiss today, as he challenges service in a separate motion. ECF Doc. No. 106.

107 923 F. Supp. 2d 702 (D.N.J. 2013).

108 *Duran*, 923 F. Supp. 2d at 720 (citing standard under *Bell v. Wolfish*, 441 U.S. 520 (1979)).

109 *Duran*, 923 F. Supp. 2d at 720.

110 *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)).

111 ECF Doc. No. 88 at p. 22, ¶ 2.

[112] *See also Cadet v. Quigley*, No. 16-2830, 2017 WL 660849, *4 (E.D. Pa. Feb. 16, 2017). In *Cadet*, plaintiff alleged he could not maintain an adequate diet because ham served by the prison one day of the week made him sick. The court granted the prison's motion to dismiss, finding plaintiff's allegation he is either unable to eat one portion of one meal per week or unable to eat a couple of meals per week due to the physical effects of eating the ham does not rise to the level of a constitutional violation. However, the court recognized cases recognizing potential claims where "it is alleged that prison officials have, in a systematic way, denied a series of meals to an inmate over a span of weeks." *Id.* at *4 (collecting cases).

[113] *Lindsey*, 327 F. App'x at 321.

[114] ECF Doc. No. 88 at p. 8, ¶ 27.

[115] *Id.* at p. 10, ¶ 38.

[116] *Id.* at p. 10-11, ¶¶ 38-42; *see also* p. 7, ¶¶ 20-22; p. 11, ¶ 46; p. 12, ¶ 47; p. 13, ¶ 56; p. 14, ¶ 57.

[117] *Id.* at p. 32, ¶ 1.

[118] *Id.* at p. 7, ¶ 24; p. 13, ¶ 52.

[119] *Id.* at p. 7, ¶ 24.

[120] *Lindsey*, 327 F. App'x at 321 (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (finding that the Eighth Amendment requires prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it")).

[121] *Id.* at p. 23, ¶ 1.

[122] *Id.* at p. 5, ¶ 10. Again, claims for denial of release from detention based on events occurring before September 28, 2015 are barred by the statute of limitations.

[123] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

[124] *Stevenson v. Carroll*, 495 F.3d 62, 69-70 (3d Cir. 2007).

[125] ECF Doc. No. 88 at p. 5, ¶ 10.

[126] *Id.* at p. 23, ¶ 1.

[127] *Id.* at pp. 33-34, ¶¶ 3, 6-13.

[128] *Id.* at pp. 32-34, ¶¶ 3, 6-13. As Mr. Williams proceeds *pro se*, we construe his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972)).

[129] ECF Doc. No. 88 at p. 36, ¶¶ 2-3.

[130] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton*, 489 U.S. at 389-91).

[131] ECF Doc. No. 88 at pp. 32-34, ¶¶ 3, 6-13; p. 36 at ¶¶ 3-4. As Mr. Williams proceeds *pro se*, we construe his allegations liberally. *Higgs*, 655 F.3d at 339 (citing *Estelle*, 429 U.S. at 106 and *Haines*, 404 U.S. at 520-521).

[132] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[133] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).

[134] As a pre-trial detainee, Mr. Williams has a constitutional right to have prison officials protect him from inmate violence under the Fifth and Fourteenth Amendments. "[U]nder the Constitution's guarantees of due process, and unsentenced inmate 'is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment." *Bistrian*, 696 F.3d at 367 (quoting *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000)).

[135] *City of Canton*, 489 U.S. at 388-89.

[136] *Simpson v. Ferry*, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (citations omitted).

[137] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[138] *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

[139] ECF Doc. No. 88 at p. 36, ¶ 3.

[140] Again, claims for denial of counselor visits based on events occurring before September 28, 2015 are barred by the statute of limitations.

[141] ECF Doc. No. 88 at p. 9, ¶ 31.

[142] *Id.* at p. 15, ¶ 63.

[143] *Randall*, 2015 WL 5027542, at *10.

[144] *Id.* at *11 ("[A] medical need is 'serious' for the purposes of a denial of medical care claim if it is either 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'").

[145] ECF Doc. No. 88 at p.4, ¶ 6; p. 6, ¶¶ 17-18; p. 9, ¶ 34; p. 11, ¶ 43; p. 12, ¶ 48; p. 14, ¶¶ 60-62; p. 15, ¶ 64. Again, claims for harassment based on events occurring before September 28, 2015 are barred by the statute of limitations.

[146] *Id.* at p. 25, ¶ 1.

[147] *Id.* at p. 4, ¶ 6; p. 6, ¶¶ 17-18; p. 9, ¶ 34; p. 11, ¶ 43; p. 12, ¶ 48; p. 14, ¶¶ 60-62; p. 15, ¶ 64.

[148] *Aleem-X v. Wescott*, 347 F. App'x 731, 731 (3d Cir. 2009) (per curiam); *Nwani v. Molly*, No. 17-3634, 2018 WL 2461987, at *10 (E.D. Pa. May 3, 2018) (collecting cases); *Jones v. C.O. Repsch*, No. 06-4638, 2007 WL 509960, *2 (E.D. Pa. Feb. 13, 2007) (collecting cases).

[149] *Nwani*, 2018 WL 2461987 at *10 (quoting *Svirbley v. McGinley*, No. 17-2292, 2018 WL 638475, at *3 (M.D. Pa. Jan. 31, 2018)). *See, e.g.*, *Richardson v. Sherrer*, 344 F. App'x 755, 757 (3d Cir. 2009) (prison employee's threat to "shut [him] up" if plaintiff was not quiet, without more, does not violate the Eighth Amendment); *Requena v. Roberts*, --- F.3d ---, 2018 WL 3097150, at *7 (9th Cir. June 22, 2018) (§ 1983 retaliation claim based on prison employee calling plaintiff a "dumb Indian" and harassing plaintiff "all night" while in segregation does not constitute adverse action sufficient to support a retaliation claim); *Wingo v. Tenn. Dept. of Corrs.*, 499 F. App'x 453, 454-55 (6th Cir. 2012) (correctional officer calling plaintiff "punk" does not create a constitutional violation).

[150] ECF Doc. No. 88 at p. 26, ¶ 1.

[151] *Coleman v. Joffee*, No. 98-5620, 1999 WL 79556, at *1 (E.D. Pa. Feb. 9, 1999) (citing *Lewis v. Casey*, 518 U.S. 343, 349-55 (1996)).

[152] ECF Doc. No. 88 at p. 32, ¶ 4.

[153] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton*, 489 U.S. at 389-91).

[154] ECF Doc. No. 88 at p. 32, ¶ 5.

[155] *Vargas*, 783 F.3d at 974 (quoting *City of Canton*, 489 U.S. at 389-91).

[156] ECF Doc. No. 88 at p. 32, ¶ 1.

[157] *Stewart v. Varano*, 601 F. App'x 107, 111 (3d Cir. 2015) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

[158] ECF Doc. No. 88 at p. 7, ¶ 19.

[159] *Id.*

[160] *Fortune v. Hamberger*, 379 F. App'x 116, 121 (3d Cir. 2010).

[161] ECF Doc. No. 88 at p. 22, ¶¶ 1-2.

[162] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Gannaway v. PrimeCare Med., Inc.*, 652 F. App'x 91, 95 (3d Cir. 2016).

[163] *See, e.g.*, *Carter v. Phelps*, No. 15-1203, 2016 WL 1039462, at *3 (D. Del. Mar. 15, 2016) (denying motion to dismiss claim for retaliation for filing grievances by decreasing food portions).

[164] ECF Doc. No. 88 at p. 28.

[165] *Id.* at p. 15, ¶ 66; p. 16, ¶ 73.

[166] *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998).

[167] ECF Doc. No. 88 at p. 15, ¶ 68.

[168] *Booth*, 346 F. Supp. 2d at 761.

[169] ECF Doc. No. 88 at p. 16, ¶¶ 69-70; p. 29, ¶ 1.

[170] *Prater v. Wetzel*, 629 F. App'x. 176, 177-78 (3d Cir. 2015) (citing to *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). *See also McKinney v. Nutter*, No. 15-4671, 2017 WL 928373, at *4 (E.D. Pa. Mar. 9, 2017) (to state a claim, a prisoner must show actually injury by demonstrating the deficiencies, or limited access to law library hindered his efforts to pursue a legal claim) (citing *Lewis v. Casey*).

[171] *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)).

[172] ECF Doc. No. 88 at p. 29.

[173] *Id.* at p. 16, ¶ 71.

[174] *Fortune*, 379 F. App'x at 120.

[175] ECF Doc. No. 88 at p. 31, ¶ 1. Again, claims for denial of release from restraints based on events before September 28, 2015 are barred by the statute of limitations

[176] *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).

[177] *Iwanicki v. Pennsylvania Dep't of Corr.*, 582 F. App'x 75, 80 (3d Cir. 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

[178] ECF Doc. No. 88, at p. 6 ¶ 14.

[179] *See, e.g.*, *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (finding "seven months disciplinary confinement" does not violate protected liberty interest).

[180] ECF Doc. No. 88, at p. 40.

[181] *Id.* at pp. 40-41.

[182] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[183] *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (footnote omitted).

[184] *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *see also Brinton v. Matty*, No. 85-5871, 1986 WL 14736, * 1 (E.D. Pa. 1986) (while a pre-trial detainee has a right to be protected from sexual assault by other inmates under the Eighth and Fourteenth Amendments, "[m]ere negligent failure to protect a prisoner is not actionable under §1983").

[185] *See, e.g.*, *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023-25 (3d Cir. 1991) (in prison suicide cases, neither the due process clause nor the Eighth Amendment imposes liability for a negligent failure to protect a detainee; a "higher level of culpability, one involving 'reckless or deliberate indifference' is required").