## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RASHAD WILLIAMS | : CIVIL ACTION |
|---|---|
| | : |
| v. | : |
| | : NO. 17-4348 |
| DELAWARE COUNTY BOARD OF | : |
| PRISON INSPECTORS, *et al.* | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                 **June 27, 2019**

A prisoner claiming prison officials and entities violated his constitutional rights by depriving him of meals, exercising his religion, housing him with violent inmates, and retaliating against him for grievances must show he exhausted his grievance rights and he actually suffered harm. It is one thing to plead these offenses in a Fourth Amended Complaint and defeat a motion to dismiss. But when tested in the crucible of discovery with offering answers in sworn testimony, the prisoner cannot proceed to trial if he did not grieve the remaining claims, admits no harm, and cannot offer proof.   We granted the prisoner multiple extensions to respond to the prison officials' post-discovery motion for summary judgment but he failed to do so.   He instead moved to compel undefined documents without explaining why unknown documents allegedly due him months ago would somehow affect our analysis.   After allowing him to proceed on limited claims, but now finding no genuine issues of material fact precluding judgment against him as a matter of law, we grant the prison officials' summary judgment and deny the prisoner's conclusory untimely request for discovery in the accompanying Orders.

## I.    Undisputed facts.[1]

On May 29, 2015, the Commonwealth incarcerated Rashad Williams at George W. Hill Correctional Facility.[2] An unnamed prison official classified him a "protective custody" inmate.[3] Mr. Williams wore a green uniform from May 29, 2015 to September 23, 2015.[4] Mr. Williams maintains prison officials dress protective custody inmates in green jumpsuits.[5] He wore a red uniform from September 23, 2015 to May 2016[6] representing "violent prone inmate"[7] who committed violent crimes like homicide or carjacking.[8]

Mr. Williams lived on the same jail block as violent inmates.[9] The violent inmates would occasionally yell at him, or give him "mean looks" or "stares."[10] His block had a dayroom, but Mr. Williams could not enter the dayroom when violent inmates congregated there.[11] Mr. Williams usually walked through the dayroom with an officer escort when violent inmates were present.[12] He occasionally walked through the dayroom unescorted.[13] He never suffered an injury from a violent inmate.[14]

On September 16, 2015, Mr. Williams was involved in a fight.[15] An unnamed officer reported Mr. Williams held down another inmate while his cellmate Terrance Gatling punched the inmate.[16] Mr. Williams asserts he tried to break up the fight.[17]

On September 28, 2015, Mr. Williams filed a grievance complaining Correctional Officer Eli Hitchens harassed him over the cell intercom.[18] He filed a second grievance the same day complaining Sergeant Abt and Officer Leach failed to provide him a disciplinary hearing.[19] The same day, he filed a third grievance complaining Officer Hitchens joked about beating him up.[20]

On September 29, 2015, the inmate food tray runners delivered his meal, Mr. Williams noticed a wet spot on his tray where he believes a piece of cake had been.[21] He heard other inmates on his block talking about cake.[22]

2

On September 30, 2015, Mr. Williams saw an inmate tray runner eat the hot dogs off his and his cellmate Terrance Gatling's lunch tray.[23] Messrs. Williams and Gatling banged on their cell door when they saw the inmate eat their hot dogs.[24] Officer Jenkins sat in the "bubble"—a glass-enclosed room above the block—at this time.[25] Mr. Williams admits he cannot confirm whether Officer Jenkins knew the inmate ate his hot dog.[26] The same day, the tray runners did not deliver Messrs. Williams's and Gatling's dinner.[27] Mr. Williams told an unnamed guard he did not receive dinner.[28] Sergeant Baldwin sat in the bubble during dinner.[29]

On October 5, 2015, Mr. Williams's spaghetti dinner smelled like feces.[30] Mr. Williams complained about the smell to an unnamed officer.[31]

On October 13, 2015, Mr. Williams arrived at the Media Sheriff's Department with a hidden weapon.[32] While in the Sheriff's holding cell, no one hurt or touched Mr. Williams.[33] Mr. Williams heard an inmate tell another inmate "we should beat his ass."[34] Mr. Williams told an unnamed official he should not be housed with other inmates in red uniforms.[35] Two days later, Mr. Williams wrote to the sheriff he should not be housed with violent inmates.[36]

On November 1, 2015, Mr. Williams sent a written request through an unnamed staff member to prison chaplain Cokelia Dunn requesting to speak with an imam.[37] Chaplain Dunn never responded to the request.[38] Mr. Williams never grieved Chaplain Dunn's failure to respond.[39]

Chaplain Dunn swears she does not recall Mr. William's request.[40] She swears "because of Mr. Williams['s] protective custody and maximum-security status, he could not associate with those Imams or attend religious service with those other inmates."[41] She swears she did not enact this rule, and has "no power to control or override this rule."[42]

On November 6, 2015, Mr. Williams did not receive his dinner from the inmate tray runners.[43] Sergeant Baldwin sat in the bubble during this time, but Mr. Williams never told him about his missing dinner.[44]

On November 7, 2015, an unnamed correctional officer failed to open the slot in Mr. Williams's cell door for his dinner tray.[45] Mr. Williams told an unnamed officer about his missing dinner.[46] Sergeant Baldwin sat in the bubble during dinner.[47]

On November 8, 2015, Mr. Williams did not receive a meal.[48] At dinner time, the inmate tray runner told Mr. Williams he could not open the slot on the cell door for the meal tray.[49] Mr. Williams could not confirm whether anyone told Sergeant Baldwin or Officer Jenkins the tray runner could not open Mr. Williams's slot.[50] Mr. Williams complained to an unnamed officer, but the inmate runner insisted Mr. Williams got his meals.[51] Officer Jenkins sat in the bubble during lunch, and Sergeant Baldwin during dinner.[52]

On November 9, 2015, an unnamed officer failed to open the meal tray slot in Mr. Williams's cell door.[53] Mr. Williams did not receive lunch or dinner.[54] Mr. Williams did not complain of the missed meals.[55] Officer Jenkins sat in the bubble during lunch, and Sergeant Baldwin during dinner.[56]

From November 10, 2015 to November 13, 2015, Mr. Williams received all his meals.[57] Sergeant Baldwin and Officer Jenkins sat in the bubble during this time.[58]

On November 14, 2015, Mr. Williams did not receive meals.[59] Officer Jenkins sat in the bubble during lunch, and Sergeant Baldwin sat in the bubble during dinner.[60] Mr. Williams did not complain about his missing meals to anyone.[61]

On November 17, 2015, an unnamed officer never opened the slot for Mr. Williams's meal tray.[62] Mr. Williams did not receive meals.[63] Officer Jenkins sat in the bubble during lunch, and Sergeant Baldwin sat there during dinner.[64]

On November 21, 2015, while taking a shower, Mr. Williams overheard an inmate ask Sergeant Baldwin, "[W]hat's up with the two P guys[?]"[65] Mr. Williams interpreted "P" as referring to "protective custody."[66] Sergeant Baldwin responded, "[S]tarve them."[67] Mr. Williams received all his meals on November 21, 2015.[68]

On December 1, 2015, when he arrived at the Sheriff's Office for his criminal trial, Sheriff officials housed him with five or six inmates in red jumpsuits.[69] Mr. Williams admits nothing happened while housed in the cell.[70] When an unnamed official brought Mr. Williams up to court, Mr. Williams told the official he should not be housed with violent inmates.[71] The official asked if anything happened in the cell, and Mr. Williams responded "no."[72]

On December 9, 2015, Mr. Williams's food smelled like feces.[73] On December 19, 2015, Mr. Williams received chicken for dinner, while other inmates received turkey.[74] Sergeant Baldwin sat in the bubble during dinner.[75] Mr. Williams did not complain about the missing meal.[76] On December 25, 2015, Mr. Williams did not receive his dinner.[77] Neither Sergeant Baldwin nor Officer Jenkins sat in the bubble.[78]

Mr. Williams received his meals from December 26, 2015 until May 13, 2016 when he left George W. Hill.[79] He admits once the inmate tray runners became comfortable with him, he started receiving all his meals.[80]

## II.    Analysis.[81]

In his Fourth Amended Complaint, Mr. Williams sued Delaware County and several officials and entities connected with George W. Hill Correctional Facility under 42 U.S.C. § 1983

5

for unconstitutional prison conditions.[82] We dismissed in part Mr. Williams's Fourth Amended Complaint and allowed him to proceed with claims against: (1) Delaware County for housing him with violent inmates in George W. Hill Correctional Facility and the Media Sheriff's Department; (2) Chaplain Dunn for denying his request to speak with an imam; (3) Sergeant Baldwin and Officer Jenkins for depriving him of meals; (4) Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn for retaliating against him after he filed a grievance on September 28, 2015; (5) and, the Board of Prison Inspectors and Community Education Centers for housing him with violent inmates and failing to train employees.

After discovery, Defendants move for summary judgment on each of these remaining claims. Delaware County moves for summary judgment arguing (1) it cannot be sued for events occurring in George W. Hill Correctional Facility and (2) Mr. Williams fails to adduce evidence he suffered harm while housed at the Media Sheriff's Department. Chaplain Dunn, Sergeant Baldwin, Officer Jenkins, the Board of Prison Inspectors, and Community Education Centers separately move for summary judgment arguing Mr. Williams failed to exhaust his administrative remedies for his claims and notwithstanding, he fails to adduce evidence establishing his claims. After granting him two extensions, Mr. Williams failed to respond to either motion in over six weeks. He instead filed an untimely motion to compel discovery without identifying the discovery he needs to answer the summary judgment motion. In an accompanying Order, we deny his untimely motion with conclusory averments to compel discovery. Even assuming discovery is due him, there is some undefined discovery from the Defendants, there is no additional facts which would allow us to deny judgment as a matter of law for the Defendants. Mindful of his *pro se* prisoner status and after careful review of the record and governing law, we find no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

**A. Mr. Williams did not satisfy his exhaustion obligations under 42 U.S.C. § 1983 and the Prison Litigation Reform Act.**

Mr. Williams sues individual and organizational Defendants under 42 U.S.C. § 1983. To establish a § 1983 claim against an individual defendant, Mr. Williams must prove the defendant, acting under color of law, violated his federal constitutional or statutory rights, and caused the alleged injury.[83] Mr. Williams must prove the individual's "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."[84] Mr. Williams can show "personal involvement" by proving the individual's "participation in or actual knowledge of and acquiescence in the wrongful conduct."[85]

Mr. Williams sues the organization Defendants, Delaware County, the Prison Board of Inspectors, and Community Education Centers, alleging a theory of municipal or organizational liability under *Monell v. Department of Social Services of New York*.[86] To establish a § 1983 claim against an organization or municipality, Mr. Williams must establish (1) he suffered a violation of his constitutional rights; the entity had a policy or custom, (2) the policy or custom "amount[ed] to deliberate indifference" to Mr. Williams's constitutional rights; (4) the policy or custom "was the 'moving force behind the constitutional violation.'"[87] To establish a policy existed, Mr. Williams must show a "'decision-maker possessing final authority to establish municipal policy with respect to the action' issue[d] an official proclamation, policy or edict."[88] Mr. Williams must show "a policymaker is responsible either for the policy or, through acquiescence, for the custom and to demonstrate a plausible nexus or affirmative link between the municipality's policy or custom and the specific deprivation of the constitutional rights at issue."[89] A custom exists through a "course of conduct . . . when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law."[90] Mr. Williams must prove a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."[91]

7

Because he sued individuals and entities while incarcerated, Mr. Williams must exhaust administrative remedies before filing suit. Under the Prison Litigation Reform Act, Congress provides "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[92] Exhaustion is a "non-jurisdictional prerequisite to an inmate bringing suit" and constitutes a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."[93] "[F]ailure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant."[94]

The exhaustion requirement is mandatory and failure to exhaust administrative remedies constitutes a procedural default of an inmate's claims.[95] "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself."[96] "[T]he determination whether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures."[97] "To properly exhaust administrative remedies, an inmate must appeal a grievance through all administrative levels of appeal at the inmate's institution."[98]

George W. Hill's Inmate Handbook details the prison's grievance process.[99] To properly grieve an issue, an inmate must complete a grievance form and submit the form to a Grievance Coordinator.[100] The Grievance Coordinator issues a written response and the inmate must file a written appeal within seven days.[101] Mr. Williams admits he understood George W. Hill's grievance procedure while incarcerated.[102]

8

### 1. Mr. Williams failed to exhaust administrative remedies for his First Amendment free exercise claim against Chaplain Dunn.

Mr. Williams alleges Chaplain Dunn violated his First Amendment right to free exercise of religion by denying his request to speak with an imam on November 1, 2015. Chaplain Dunn argues Mr. Williams failed to exhaust administrative remedies for his claim.

Mr. Williams failed to exhaust administrative remedies for his First Amendment free exercise claim as he admitted during his deposition he did not submit a grievance form for Chaplain Dunn's failure to respond to his November 1, 2015 request.[103] Failure to exhaust administrative remedies bars Mr. Williams's claim.[104]

### 2. Mr. Williams failed to exhaust administrative remedies for his Eighth Amendment claim for deprivation of meals against Sergeant Baldwin and Officer Jenkins.

Mr. Williams alleges Sergeant Baldwin and Officer Jenkins violated his Eighth Amendment rights by depriving him of meals. Sergeant Baldwin and Officer Jenkins argue Mr. Williams failed to exhaust administrative remedies for his claims.

Mr. Williams failed to exhaust administrative remedies for his claims against Sergeant Baldwin and Officer Jenkins for depriving him of meals. He testified he grieved the deprivation of meals but he never provided the alleged grievance forms in discovery, and admits he never appealed the alleged grievances.[105] Even assuming he submitted grievances for the deprivation of meals, under the Inmate's Handbook Mr. Williams must appeal a grievance decision to properly exhaust administrative remedies for his claims.[106] His failure to exhaust administrative remedies bars his claims for deprivation of meals.

9

### 3. Mr. Williams failed to exhaust administrative remedies for retaliation claims against Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn.

Mr. Williams claims Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn retaliated against him for filing a grievance on September 28, 2015. Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn argue Mr. Williams failed to exhaust administrative remedies for his retaliation claims.

Mr. Williams failed to exhaust administrative remedies for his retaliation claims as he never submitted grievance forms for retaliatory conduct.[107] He fails to point to a grievance for these Defendants' conduct, and he failed to produce a grievance for retaliatory conduct to Defendants during discovery. Failure to exhaust administrative remedies bars his retaliation claims against Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn.

### 4. Mr. Williams failed to exhaust administrative remedies for his Eighth Amendment claim against the Board of Prison Inspectors and Community Education Centers for housing him with violent inmates.

Mr. Williams alleges the Board of Prison Inspectors and Community Education Centers violated his Eighth Amendment rights by housing him with violent inmates. The Board of Prison Inspectors and Community Education Centers argue Mr. Williams failed to exhaust administrative remedies for his claims.

Mr. Williams failed to exhaust administrative remedies for his claim against the Board and Community Education Centers since he never grieved his housing with violent inmates.[108] Mr. Williams never produced any grievance form complaining of his housing with violent inmates during discovery. Failure to exhaust administrative remedies bars his claims.[109]

10

## C.     We grant Delaware County summary judgment on Mr. Williams's claim for housing him with violent inmates at the George W. Hill Correctional Facility.

Mr. Williams alleges municipal liability against Delaware County for housing him with violent inmates at George W. Hill Correctional Facility.[110] He alleges Delaware County failed to train and supervise the Delaware County Board of Prison Inspectors and Community Education Centers leading to alleged constitutional violations at the prison.[111] Delaware County argues we cannot hold the county liable for events occurring at the prison because it does not control the Board of Prison Inspectors or Community Education Centers.

To prove a *Monell* claim against Delaware County, Mr. Williams must prove: (1) Delaware County "had a policy or custom that deprived [him] of his constitutional rights"; (2) Delaware County acted "deliberately and was the moving force behind the deprivation"; and (3) Mr. Williams's injuries "were caused by the identified policy or custom."[112]

Mr. Williams must prove a "policy" or "custom" caused his injury. A "policy" is a "statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[113] A "custom" need not "have received formal approval through official decisionmaking channels, but it 'must have the force of law by virtue of the persistent practices' of municipal officials."[114]

"Control of jails and county prisons in Delaware County is vested in the Delaware County Board of Prison Inspectors, which has entered into a contract with a private corporation, the GEO Group, Inc., to operate them."[115] In denying Delaware County's motion to dismiss, we explained courts held Delaware County cannot be liable for claims arising out of events at the George W. Hill Correctional Facility.[116] But given his *pro se* pleading, we allowed Mr. Williams an opportunity to prove his claim. He fails to do so. Mr. Williams adduces no evidence showing Delaware County's control over the Board of Prison Inspectors or Community Education Centers.

11

He adduces no evidence Delaware County implemented a policy or custom causing an alleged constitutional violation at George W. Hill Correctional Facility. Mr. Williams instead admits he relied on a "crackpot" inmate who told him Delaware County "hires the people that work at [Community Education Centers]."[117]

We grant Delaware County summary judgment on Mr. Williams's claim for housing him with violent inmates at George W. Hill Correctional Facility.

## D. We grant Delaware County summary judgment on Mr. Williams's claim for housing him with violent inmates in the Media Sheriff's Department.

Mr. Williams argues Delaware County violated his Eighth Amendment rights when it housed him with violent inmates in the Media Sheriff's Department holding cell on October 13, 2015 and December 1, 2015. Delaware County argues Mr. Williams fails to adduce evidence to establish a claim under the Eighth Amendment for housing him with violent inmates.

Mr. Williams brings a failure to protect claim under the Eighth Amendment for housing him with violent inmates. Under the Eighth Amendment, prison officials must "protect prisoners from violence at the hands of other prisoners."[118] To establish a claim for failure to protect under the Eighth Amendment, Mr. Williams must prove: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm."[119] To survive summary judgment, Mr. Williams must show Delaware County "knowingly and unreasonably disregarded an objectively intolerable risk of harm."[120]

In *Greenfield*, a violent inmate attacked the plaintiff inmate and broke his jaw.[121] The inmate sued the county under the Eighth Amendment alleging the county housed him with a violent inmate. The district court granted summary judgment for the county.[122] The court explained while the inmate suffered a serious injury, he presented no evidence prison officials "were deliberately

indifferent to an excessive risk to [the inmate]'s health or safety."[123] The court explained while the attacker had a history of violent crime convictions, most inmates had violent crime convictions, and the fact prison officials housed one inmate on the same block as the attacker does not establish deliberate indifference. The inmate presented no evidence the attacker had a history of "problem behavior" or violent conduct at the prison of which prison officials were aware.[124] The attacker never threatened the inmate at the prison, and the inmate never complained to a prison official of threatening behavior.

Mr. Williams fails to adduce evidence a Delaware County official acted under a policy or custom causing a deprivation of his constitutional rights. Mr. Williams essentially argues we should find Delaware County liable because it housed him with "violent prone inmates." As the district court explained in *Greenfield*, this general allegation fails to establish an Eighth Amendment claim. Mr. Williams admits he never suffered an injury from another inmate. He adduces no evidence Delaware County officials know of a substantial risk to his health or safety while housed with other inmates in the Media Sheriff's Department. He never informed a Delaware County official of a threat of violence from another inmate. He admits he told an unnamed official on December 1, 2015 other inmates in the Media Sheriff's Department holding cell posed no threat.[125] When he arrived at the Media County Sheriff's Department, he possessed a hidden weapon. To the extent an inmate presented a threat, Mr. Williams himself posed the threat.

We grant Delaware County summary judgment on Mr. Williams's Eighth Amendment claim for housing him with violent inmates in the Media Sheriff's Department.

### E. We grant Chaplain Dunn summary judgment for Mr. Williams's claim of denial of free exercise of religion.

Mr. Williams alleges on November 1, 2015, Chaplain Dunn violated his First Amendment right to free exercise of religion by denying his request to speak with an imam. Chaplain Dunn

13

argues Mr. Williams failed to exhaust administrative remedies for his claim, and he fails to establish her personal involvement in an alleged constitutional violation.

Under the First Amendment, states cannot prohibit the free exercise of religion.[126] The First Amendment applies to incarcerated persons, but the states may limit free exercise to serve "valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security."[127] We look at four factors to determine the constitutionality of restrictions on free exercise: (1) whether a restriction bears a "valid, rational connection" between the restriction and a legitimate governmental interest; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and, (4) whether an "alternative [exists] that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests."[128]

As explained, Mr. Williams failed to exhaust administrative remedies for this claim as he admitted he did not grieve Chaplain Dunn's failure to respond to his November 1, 2015 request.[129] Failure to exhaust administrative remedies bars Mr. Williams's claim.[130] Notwithstanding his failure to exhaust administrative remedies, he fails to adduce evidence establishing his claim. Mr. Williams testified on November 1, 2015, he gave a written request to speak to an imam to an unnamed staff member to give to Chaplain Dunn but could not confirm Chaplain Dunn received the request.[131] Mr. Williams failed to produce a copy of the request in discovery. Chaplain Dunn swears she never received Mr. Williams's request.[132] She also swears she has no control over the Prison's policy concerning inmate interaction with clergy members.[133] Mr. Williams fails to adduce evidence Chaplain Dunn received, or even knew of, his November 1, 2015 request. We also question whether Mr. Williams's inability to speak with an imam on one occasion constitutes

a First Amendment violation.[134] But since he failed to exhaust administrative remedies for this claim, and he fails to offer evidence of Chaplain Dunn's personal involvement in the alleged violation, we grant Chaplain Dunn's motion for summary judgment on Mr. Williams's First Amendment claim.

## F. We grant Sergeant Baldwin and Officer Jenkins summary judgment on Mr. Williams's claim for deprivation of meals.

Mr. Williams alleges Sergeant Baldwin and Officer Jenkins deprived him of meals on September 29 and 30, November 6, 7, 8, 9, 14, and 17, and December 19 and 25, 2015. Sergeant Baldwin and Officer Jenkins argue Mr. Williams failed to exhaust administrative remedies for his claim, and he fails to adduce evidence establishing their personal involvement in a constitutional violation.

"[P]rison officials violate an inmate's Eighth Amendment rights when they deprive her of 'a single identifiable human need such as food[.]'"[135] "An inmate's diet must provide adequate nutrition, but corrections officials may not be held liable unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the officials acted with a sufficiently culpable state of mind)."[136]

As explained, Mr. Williams failed to exhaust administrative remedies for his claims against Sergeant Baldwin and Officer Jenkins for depriving him of meals. His failure to exhaust administrative remedies bars his claims for deprivation of meals.

Notwithstanding his failure to exhaust, Mr. Williams fails to adduce evidence establishing Sergeant Baldwin's and Officer Jenkins's personal involvement in allegedly depriving him of meals. Mr. Williams never informed Sergeant Baldwin or Officer Jenkins about the missing meals. He essentially argues liability because Sergeant Baldwin and Officer Jenkins sat in the glass-enclosed "bubble" above the block at times when Mr. Williams did not receive a meal. But he

admits he could not confirm either Sergeant Baldwin or Officer Jenkins knew he did not receive meals.[137] Mr. Williams further admits he began receiving his meals when the inmate tray runners became comfortable with him.[138] Assuming Mr. Williams did not receive meals on the alleged dates, he fails to adduce evidence showing Sergeant Baldwin's or Officer Jenkins's personal involvement in the deprivation of meals necessary to establish a claim under § 1983.

We grant Sergeant Baldwin and Officer Jenkins summary judgment on Mr. Williams's claims for deprivation of meals.

## G. We grant Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn summary judgment on Mr. Williams's retaliation claims.

Mr. Williams claims Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn retaliated against him for filing a grievance on September 28, 2015. Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn argue Mr. Williams failed to exhaust administrative remedies for his retaliation claims and notwithstanding, he fails to adduce evidence establishing a retaliation claim.

Mr. Williams claims retaliation in response to his September 28, 2015 grievance. To establish a claim for First Amendment retaliation, Mr. Williams must prove: "(1) constitutionally protected conduct, (2) a retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action."[139] Filing a grievance within a prison grievance system constitutes constitutionally protected conduct.[140] Mr. Williams can prove a causal link by showing: "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing[.]"[141]

In *Royster v. Beard*, the plaintiff prisoner sued several prison officials alleging they destroyed his personal photographs and books in retaliation for filing grievances.[142] The district court granted summary judgment to the prison officials holding the prisoner failed to establish his

retaliation claim.[143] Our court of appeals affirmed the district court's grant of summary judgment. The court of appeals explained the prisoner failed to show a causal link because he could not recall filing a grievance against the defendants or ever naming the defendants in a grievance.[144]

Mr. Williams failed to exhaust administrative remedies for his retaliation claims as he never grieved retaliatory conduct.[145] Failure to exhaust administrative remedies bars his claim.

Notwithstanding his failure to exhaust, he fails to adduce evidence establishing a retaliation claim against Sergeant Baldwin, Officer Jenkins, or Chaplain Dunn. Mr. Williams never produced a September 28, 2015 grievance. He now admits Sergeant Baldwin did not retaliate against him.[146] He swore he filed several grievances on September 28, 2015, but admitted he did not mention Sergeant Baldwin, Officer Jenkins, or Chaplain Dunn in a grievance, nor did he ever grieve their conduct.[147] He only grieved non-parties' separate conduct.[148] Mr. Williams adduces no evidence Sergeant Baldwin, Officer Jenkins, or Chaplain Dunn knew of his alleged September 28, 2015 grievances. While he separately complained about Officer Jenkins to her supervisors, Mr. Williams admits he cannot confirm Officer Jenkins knew about his complaints.[149] Like the prisoner in *Royster*, Mr. Williams fails to show a causal link between his grievance and retaliatory conduct. Mr. Williams adduces no evidence from which we could infer Sergeant Baldwin, Officer Jenkins, or Chaplain Dunn retaliated against him for filing grievances on September 28, 2015.

We grant Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn summary judgment on Mr. Williams's First Amendment retaliation claims.

**H.     We grant the Prison Board of Inspectors and Community Education Centers summary judgment on Mr. Williams's claims for housing him with violent inmates and failure to train.**

Mr. Williams claims the Prison Board of Inspectors and Community Education Centers violated his Eighth Amendment rights by housing him with violent inmates. He also claims the

Prison Board of Inspectors and Community Education Centers failed to train its employees to curb "the pattern of misconduct."[150] Since he brings these claims against organizations under § 1983, Mr. Williams must prove (1) the Board and Community Education Centers "had a policy or custom that deprived [him] of his constitutional rights"; (2) the Board and Community Education Centers acted "deliberately and was the moving force behind the deprivation"; and (3) Mr. Williams's injuries "were caused by the identified policy or custom."[151] We address each claim in turn.

### 1. We grant the Prison Board of Inspectors and Community Education Centers summary judgment on Mr. Williams's claim for housing him with violent inmates.

Mr. Williams sues the Prison Board of Inspectors and Community Education Centers under the Eighth Amendment alleging they housed him with violent inmates.

To succeed on a failure to protect claim under the Eighth Amendment, Mr. Williams must prove: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm."[152] To survive summary judgment, Mr. Williams must offer evidence showing the Board of Prison Inspectors and Community Education Centers "knowingly and unreasonably disregarded an objectively intolerable risk of harm."[153]

As explained, Mr. Williams failed to exhaust administrative remedies for his claim against the Board and Community Education Centers since he never grieved his housing with violent inmates.[154] Failure to exhaust administrative remedies bars his claims.[155]

Notwithstanding his failure to exhaust, Mr. Williams fails to adduce evidence establishing his claim. Mr. Williams bases his claims against Community Education Centers on his assertion Community Education Centers' "staff are the ones who house."[156] He asserts the Delaware County Board of Prison Inspectors "hired [Community Education Centers], so they know what

18

[Community Education Centers is] capable of doing."[157] Mr. Williams admits he never shared a cell with a violent inmate.[158] He further admits no violent inmate ever harmed him.[159] Mr. Williams adduces no evidence the Board of Prison Inspectors or Community Education Centers had a policy or custom causing a constitutional violation. In fact, Mr. Williams admits the Prison has a policy prohibiting the "intermingling" of different classifications of inmates.[160] He admits most times he walked through the dayroom on his block with violent inmates, at least one correctional officer escorted him. He only occasionally encountered violent inmates without an escort, and when it occurred, the inmates merely stared at him.[161] He fails to adduce evidence an official disregarded an intolerable risk of harm, or a policy or custom existed amounting to deliberate indifference to a risk of harm. As in *Greenfield*, Mr. Williams cannot establish a failure to protect claim merely alleging the presence of violent inmates.

We grant the Board of Prison Inspectors and Community Education Centers summary judgment on Mr. Williams's claim of housing him with violent inmates.

## 2. We grant the Board of Prison Inspectors and Community Education Centers summary judgment on Mr. Williams's failure to train claim.

Mr. Williams claims the Board of Prison Inspectors and Community Education Centers violated his Eighth Amendment rights by failing to train its employees to curb misconduct in the Prison. The Board and Community Education Centers argue Mr. Williams fails to adduce evidence to support his claim.

Mr. Williams can bring a claim for failure to train by proving "deliberate indifference."[162] To establish a failure to train or supervise amounts to "deliberate indifference," Mr. Williams must prove: "(1) [the Board of Prison Inspectors and Community Education Centers] know that employees will confront a particular situation; (2) the situation involves a difficult choice or a

19

history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[163]

Mr. Williams fails to adduce evidence showing a policy or custom establishing his failure to train claim. We grant the Board of Prison Inspectors and Community Education Centers summary judgment on Mr. Williams's failure to train claim.

## III. Conclusion.

In an accompanying Order, we grant Delaware County's motion for summary judgment on Mr. Williams's claims for housing him with violent inmates at George W. Hill Correctional Facility and the Media Sheriff's Department. We grant Chaplain Dunn's motion for summary judgment on Mr. Williams's claim for denial of his request to speak with an imam. We grant the motion of Sergeant Baldwin and Officer Jenkins for summary judgment on Mr. Williams's claim for deprivation of meals. We grant the motion of Sergeant Baldwin, Officer Jenkins, and Chaplain Dunn on Mr. Williams's claim for First Amendment retaliation for filing his September 28, 2015 grievance. We grant the motion of the Delaware County Board of Prison Inspectors and Community Education Centers for summary judgment on Mr. Williams's claims for housing him with violent inmates and failure to train employees.

---

[1] Our Policies and Procedures require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of a motion for summary judgment. Delaware County filed its motion for summary judgment, brief, and SUMF at ECF Doc. No. 154. Delaware County filed its appendix at ECF Doc. No. 154-2. The Board of Prison Inspectors, Community Education Centers, Geoffrey Baldwin, Gloria Jenkins, and Cokelia Dunn filed their motion for summary judgment at ECF Doc. No. 155. They filed their SUMF at ECF Doc. No. 156 and their appendix at ECF Doc. No. 157.

[2] ECF Doc. No. 154-2, at p. 6. In partially dismissing Mr. Williams's Fourth Amended Complaint, we held the statute of limitations barred Mr. Williams's claims based on conduct occurring before September 28, 2015.

[3] *Id.* at p. 94.

20

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* at p. 27.

[8] *Id.*

[9] *Id.* at p. 67.

[10] *Id.* at p. 69.

[11] *Id.* at p. 68.

[12] *Id.*

[13] *Id.*

[14] *Id.* at p. 67.

[15] *Id.* at p. 51.

[16] *Id.*

[17] *Id.* at p. 52.

[18] *Id.* at p. 79.

[19] *Id.* at p. 81.

[20] *Id.*

[21] *Id.* at p. 26.

[22] *Id.*

[23] *Id.* at p. 29.

[24] *Id.*

[25] *Id.* at p. 30.

[26] *Id.* at p. 31.

[27] *Id.* at p. 32.

[28] *Id.*

[29] *Id.* at p. 33.

[30] *Id.* at p. 34.

[31] *Id.* at p. 35.

[32] *Id.* at p. 96-97.

[33] *Id.* at p. 99 ("Q: Did anybody touch you, hurt you in any way? Anything like that? A: No.").

[34] *Id.* at p. 100.

[35] *Id.* at p. 99.

[36] *Id.* at p. 101.

[37] *Id.* at p. 16.

[38] *Id.*

[39] *Id.* at p. 18.

[40] ECF Doc. No. 157-2, at p. 288a.

[41] *Id.*

[42] *Id.* at pp. 288a-289a.

[43] ECF Doc. No. 154-2, at p. 36.

[44] *Id.* at pp. 37-38.

[45] *Id.* at p. 38.

[46] *Id.* at p. 39.

[47] *Id.*

[48] *Id.* at p. 41.

[49] *Id.* at p. 43.

[50] *Id.* at p. 44.

[51] *Id.* at p. 41.

[52] *Id.*

[53] *Id.* at p. 45.

[54] *Id.*

[55] *Id.*

[56] *Id.* at p. 46.

[57] *Id.* at p. 48.

[58] *Id.*

[59] *Id.* at p. 49.

[60] *Id.*

[61] *Id.* at p. 53.

[62] *Id.*

[63] *Id.*

[64] *Id.* at p. 54.

[65] *Id.* at p. 55.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] *Id.* at p. 103.

[70] *Id.* at p. 104.

[71] *Id.*

[72] *Id.*

[73] *Id.* at p. 54.

[74] *Id.* at p. 56.

[75] *Id.*

[76] *Id.*

[77] *Id.* at p. 57.

[78] *Id.*

[79] *Id.* at p. 58.

[80] *Id.*

[81] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson,* 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris,* 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg,* 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh,* 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis,* 808 F.3d at 643 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis,* 808 F.3d at 643 (citing *Celotex Corp.,* 477 U.S. at 322-323).

[82] ECF Doc. No. 88.

[83] *Elmore v. Cleary,* 399 F.3d 279, 281 (3d Cir. 2005) (citing *Sameric Corp. of Del., Inc. v. City of Phila.,* 142 F.3d 582, 590 (3d Cir. 1998)).

[84] *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 537 n.3 (1981)).

[85] *Chavarriaga v. New Jersey Dep't of Corr.,* 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode,* 845 F.2d at 1207).

24

[86] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978); *see also Hess v. Beaver Cty. Jail*, No. 05-1636, 2006 WL 3484297, at *1 (W.D. Pa. Nov. 30, 2006) (explaining the *Monell* doctrine for municipal liability extends to private corporate entities acting under color of law).

[87] *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989));

[88] *Schwartz v. Cty. of Montgomery*, 823 F. Supp. 296, 300 (E.D. Pa. 1993) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

[89] *Id.* (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

[90] *Austin v. Cty. of Butler*, No. 12-534, 2013 WL 425134, at *6 (W.D. Pa. Feb. 4, 2013) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).

[91] *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214-15 (3d Cir. 2001).

[92] 42 U.S.C. § 1997e(a).

[93] *Rinaldi v. United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Small v. Camden Cty.*, 728 F.3d 265, 270 (3d Cir. 2013)).

[94] *Dawson v. Cook*, 238 F. Supp. 3d 712, 718 (E.D. Pa. 2017) (quoting *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002)).

[95] *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004).

[96] *Dawson*, 238 F. Supp. 3d at 718 (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

[97] *Robinson v. Tennis*, No. 11-1724, 2012 WL 4442586, at *2 (M.D. Pa. Sept. 24, 2012) (quoting *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)).

[98] *Johnson v. George W. Hill Corr. Facility*, No. 06-4476, 2008 WL 4115768, at *1 (E.D. Pa. Aug. 29, 2008).

[99] ECF Doc. No. 157-2, at p. 276a.

[100] *Id.* at p. 277a.

[101] *Id.*

[102] *Id.* at p. 35a.

[103] ECF Doc. No. 154-2, at p. 18.

25

[104] *Eakle v. Palakovich*, 200 F. App'x 155, 156 (3d Cir. 2006) (affirming district court's dismissal of prisoner's First Amendment claim for failure to appeal grievance response denying "his requests for a prayer rug and religious necklace").

[105] ECF Doc. No. 154-2, at p. 61.

[106] *Johnson*, 2008 WL 4115768, at *1 ("Mr. Johnson claims he exhausted the grievance process; however, he does not claim that he filed any appeals, which were necessary to exhaust the grievance process.").

[107] *See Horan v. Collins*, No. 13-140, 2016 WL 5030468, at *3 (M.D. Pa. Aug. 8, 2016), *report and recommendation adopted*, No. 13-140, 2016 WL 5033234 (M.D. Pa. Sept. 19, 2016) ("[R]etaliation is a separate claim that must be raised in an inmate's prison grievance to exhaust administrative remedies.").

[108] ECF Doc. No. 157-2, at pp. 216a-230a (compilation of Mr. Williams's grievances while incarcerated at George W. Hill).

[109] *Sharpe v. Costello*, 289 F. App'x 475, 477 (3d Cir. 2008) (explaining the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

[110] As a pre-trial detainee, Mr. Williams has a constitutional right to have prison officials protect him from inmate violence under the Fifth and Fourteenth Amendments. "[U]nder the Constitution's guarantees of due process, and unsentenced inmate 'is entitled[,] at a minimum, to no less protection than a sentenced inmate is entitled to under the Eighth Amendment.'" *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (quoting *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000)).

[111] ECF Doc. No. 88, at p. 34 ¶ 10.

[112] *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 436 (E.D. Pa. 2015) (citing *Monell*, 436 U.S. at 692-94).

[113] *Gentry v. Lancaster Cty.*, No. 10-2350, 2014 WL 4376155, at *13 (E.D. Pa. Sept. 4, 2014) (quoting *Muhlenberg Twp.*, 269 F.3d at 215).

[114] *Id.*

[115] *Miles v. Lansdowne Borough*, No. 11-1913, 2012 WL 5960874, at *6 (E.D. Pa. Nov. 29, 2012).

[116] *Morgan-Mapp v. George W. Hill Corr. Facility*, No. 07-2949, 2008 WL 4211699, at *16 (E.D. Pa. Sept. 12, 2008) ("Since control of jails and county prisons in Delaware County is vested in the [Delaware County Board of Prison Inspectors], the County of Delaware is not a proper governmental defendant."); *Pierson v. Members of Delaware Cty.*, No. 99-3935, 2000 WL 486608,

at *3 (E.D. Pa. Apr. 25, 2000) ("[T]he Delaware County Prison is under the control of the Delaware County Board of Prison Inspectors[.]").

[117] ECF Doc. No. 154-2, at p. 104.

[118] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[119] *Bistrian*, 696 F.3d at 367 (citing *Farmer*, 511 U.S. at 834).

[120] *Greenfield v. Cty. of Lackawanna*, No. 05-0217, 2006 WL 2129129, at *4 (M.D. Pa. July 27, 2006) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 132 (3d Cir. 2001)).

[121] *Id.*

[122] *Id.* at *5.

[123] *Id.* at *4.

[124] *Id.*

[125] ECF Doc. No. 154-2, at p. 104 ("He said, you all right? Anything happen? I said no, ain't nothing happening, but I said I shouldn't be in there.").

[126] U.S. Const. amend. I; *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940) (holding the First Amendment right to free exercise applicable to the states through the Fourteenth Amendment).

[127] *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (citing *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974)).

[128] *Turner v. Safley*, 482 U.S. 78, 91 (1987).

[129] ECF Doc. No. 154-2, at p. 18.

[130] *Eakle*, 200 F. App'x at 156 (affirming district court's dismissal of prisoner's First Amendment claim for failure to appeal grievance response denying "his requests for a prayer rug and religious necklace").

[131] ECF Doc. No. 154-2, at p. 16.

[132] ECF Doc. No. 157-2, at p. 74.

[133] ECF Doc. No. 157-2, at p. 74.

[134] *See, e.g.*, *Creveling v. Johnson*, No. 11-667, 2013 WL 504810, at *4 (D.N.J. Feb. 11, 2013) (granting director of correctional facility summary judgment on prisoner's First Amendment claim

for failure to provide weekly Catholic mass explaining a correctional facility "does not have an affirmative duty to supply its residents with priests or religious services").

[135] *Geter v. Dauphin Cty. Prison Authorities*, No. 18-1579, 2019 WL 522693, at *7 (M.D. Pa. Feb. 11, 2019) (quoting *Chavarriaga*, 806 F.3d at 226).

[136] *Duran v. Merline*, 923 F. Supp. 2d 702, 719-20 (D.N.J. 2013) (citing *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007)).

[137] ECF Doc. No. 31.

[138] ECF Doc. No. 154-2, at p. 59 ("Q: So once these inmates became more comfortable with you or knew who you were, then they weren't trying to take your food then? A: Right . . . it was over[.]").

[139] *Farmer v. Decker*, 353 F. Supp. 3d 342, 352 (M.D. Pa. 2018) (quoting *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

[140] *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006).

[141] *Horan*, 2016 WL 5030468, at *3 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

[142] *Royster v. Beard*, 308 F. App'x 576, 577 (3d Cir. 2009).

[143] *Id.*

[144] *Id.* at 579.

[145] *See Horan*, 2016 WL 5030468, at *3 ("[R]etaliation is a separate claim that must be raised in an inmate's prison grievance to exhaust administrative remedies.").

[146] ECF Doc. No. 154-2, at p. 78 ("Q: [W]hen you complained about Officer Baldwin not getting you food, how did he retaliate if at all? A: They don't retaliate.").

[147] *Id.* at p. 79.

[148] *Id.* at p. 80.

[149] *Id.* at p. 76.

[150] ECF Doc. No. 88, at p. 36 ¶ 2.

[151] *Buoniconti*, 148 F. Supp. 3d at 436 (citing *Monell*, 436 U.S. at 692-94).

[152] *Bistrian*, 696 F.3d at 367 (citing *Farmer*, 511 U.S. at 834).

[153] *Greenfield*, 2006 WL 2129129, at \*4 (quoting *Beers-Capitol*, 256 F.3d at 132).

[154] ECF Doc. No. 157-2, at pp. 216a-230a (compilation of Mr. Williams's grievances while incarcerated at George W. Hill).

[155] *Sharpe*, 289 F. App'x at 477 (explaining the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").

[156] ECF Doc. No. 154-2, at p. 69.

[157] *Id.* at p. 73.

[158] *Id.* at p. 67.

[159] *Id.*

[160] *Id.* at p. 70.

[161] *Id.*

[162] *Farmer*, 511 U.S. at 840.

[163] *Banegas v. Hampton*, No. 08-5348, 2009 WL 1098845, at \*4 (E.D. Pa. Apr. 22, 2009) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).