IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RASHAD WILLIAMS** | : CIVIL ACTION |
| | : |
| **v.** | : NO. 17-4348 |
| | : |
| **SARGEANT JOANNE ABT** | : |

# MEMORANDUM

**KEARNEY, J.**  August 17, 2021

A prison disciplining a pretrial detainee involved in a fight among detainees must afford him proper notice and an opportunity to contest the discipline. The level of due process depends on the level of discipline; the more severe disciplinary detention requires more due process than the less severe administrative segregation. After discovery, a prison's Chief of Security and a Sergeant move for summary judgment arguing the pretrial detainee did not exhaust his administrative remedies, cannot show their personal involvement in the alleged conduct, and even if he exhausted and can show personal involvement, they provided the required due process for the level of discipline which they now characterize as administrative segregation although their records seemingly belie their assertions. The Chief of Security is correct as to no evidence of his personal involvement and we must dismiss him. But the Sergeant who signed a notice charging the pretrial detainee with a disciplinary action before the prison admittedly did not hold a hearing is personally involved. The Sergeant also failed to adduce evidence meeting her affirmative defense of showing the pretrial detainee failed to exhaust his administrative remedies. The facts are not clear as to the level of discipline imposed upon the detainee. We cannot decide the required level of due process without knowing the level of discipline. And absent a preliminary finding based on competent evidence of the pretrial detainee not exhausting administrative remedies, we

will proceed to trial next month on the pretrial detainee's procedural due process claims against the Sergeant as there are genuine issues of material fact as to the nature of the imposed discipline and the due process afforded him following the fight among detainees.

I.   **Adduced facts[1]**

The Commonwealth incarcerated Rashad Williams as a pretrial detainee at the George W. Hill Correctional Facility in May 2015. Mr. Williams fought someone in the prison on September 16, 2015.[2] An officer reported Mr. Williams held down an inmate while his cellmate punched the inmate.[3] The officer further reported Mr. Williams and his cellmate "will stay on the unit as [administrative segregation] pending hearing."[4] The various prison incident reports regarding the September 16 fight do not mention or otherwise involve the prison's Chief of Security, Richard Leach.[5]

Mr. Williams appears to have been transferred to segregation on September 16 because of the incident.[6] Mr. Williams admits the prison provided him an explanation for his transfer.[7] Inmate Segregation Activity Logs show prison officials only offered Mr. Williams meals between September 16 and September 27.[8] Beginning on September 28, Mr. Williams appears to have been placed on administrative segregation and prison officials offered Mr. Williams meals, showers, and recreation time.[9] The parties did not produce segregation activity logs after October 15, 2015.[10]

The prison provided Mr. Williams notice of a disciplinary hearing regarding the September 16 incident to take place on September 22 and 23, 2015.[11] The notice informed Mr. Williams of being "charged with a Disciplinary Action" for engaging in certain misconduct in violation of prison policy.[12] Sergeant Joanne Abt signed the notice.[13] The prison did not conduct a hearing regarding the September 16 incident.[14] No one disputes the lack of a hearing.

But it is unclear what happened with the discipline. Was Mr. Williams placed in disciplinary detention or administrative segregation? Chief Leach swears "he can find no evidence [Mr. Williams] was given disciplinary detention" for the September 16 incident and, instead, "[i]t appears that [Mr. Williams] was transferred from Unit 10, Block D, to Unit 10, Block C on September 28, 2015."[15] He further swears, "[i]t does not appear from the records that this was based on disciplinary detention."[16] He swears Mr. Williams "was placed in administrative segregation/protective custody," where he was "permitted to have commissary and other privileges."[17]

He further swears he does not decide the transfer of inmates to disciplinary detention nor play a role in ordering or commencing the actual transfer.[18] He swears the Shift Commander oversees these transfers.[19] He swears he never decided to take Mr. Williams to disciplinary detention, nor did he ever physically take Mr. Williams to disciplinary detention at any time.[20]

Chief Leach admits the prison did not conduct a hearing regarding the September 16 incident.[21] He swears Sergeant Abt was a disciplinary hearing officer at that time and, in her role, she presided over hearings scheduled before her.[22] He swears she "did not have the authority to cancel a hearing or refuse a hearing to any inmate."[23] But he then ventures from swearing to facts to offering an apparent speculative opinion of it being "unlikely" Sergeant Abt "would have had anything to do with denying [Mr. Williams] any hearings."[24]

### *Grievance procedure.*

The prison's inmate handbook required incarcerated persons complete a grievance form to formally file a grievance.[25] The Grievance Coordinator then reviews the grievance and either resolves the matter or refers it to the proper section for resolution; a response to a grievance will typically be given within seven days of the date of the grievance.[26] Once a response is received,

3

the incarcerated person will then sign his name at the bottom of the response.[27] He may appeal a grievance to the Warden within seven days if he does "not agree with the response provided on the grievance."[28]

Mr. Williams admits he received the inmate handbook and understood the outlined procedure for filing grievances.[29] Mr. Williams filled out various grievance forms and requests for information regarding the September 16 incident and his transfer to restrictive housing.[30] Mr. Williams dated these forms between September 27, 2015 and May 12, 2016.[31] The parties dispute – and it is unclear from the record – whether Mr. Williams properly filed these grievance forms with the prison. The "Date/Time Received," "Grievance Coordinator Name," "Disposition of Grievance," "Date of Response," and "Responding Staff Member name" fields are blank on Mr. Williams' grievance forms. The "Action Taken" and "Staff Signature" fields are similarly blank on Mr. Williams' requests for information.

### *Mr. Williams sues several state actors challenging his pretrial detention.*

Mr. Williams then pro se sued the Delaware County Board of Prison Inspectors, Community Education Centers, Inc., and several prison officials, including Chief Leach and Sergeant Abt, in September 2017 claiming he suffered numerous constitutional violations as a pretrial detainee at the George W. Hill Correctional Facility.[32] Mr. Williams amended his complaint four times.[33] Mr. Williams alleged he received notice of a hearing to convene on September 22 and 23, 2015 regarding a September 16 fight.[34] He claimed Chief Leach and Sergeant Abt placed him on "pre-disciplinary detention (segregation)."[35] He further alleged Chief Leach and Sergeant Abt denied him "a misconduct hearing as stated in the pre-dated notice."[36] He alleged Chief Leach ordered state actors to remove him from his cell in protective custody on September 25, 2015 and place him in the restrictive housing unit.[37]

The state actors moved to dismiss arguing Mr. Williams' pro se claims based on events occurring before September 28, 2015 are barred under the applicable two-year statute of limitations including procedural due process claim related to his transfer and subsequent denial of a hearing.[38] We agreed, having no fact basis to find Mr. Williams timely relinquished his complaint to prison officials under the mailbox rule, and dismissed Mr. Williams' procedural due process claim based on the timing of his lawsuit.[39] We accordingly did not evaluate the merits of his procedural due process claim or whether Mr. Williams properly exhausted available administrative remedies as to this claim.[40] We allowed four other claims to proceed to discovery.[41] The state actors later moved for summary judgment. We granted summary judgment.[42]

Mr. Williams appealed.[43] He added documents to the appellate record never shown to us relating to the mailing of his claims under the mailbox rule. Our Court of Appeals affirmed our judgment on all but one of Mr. Williams' claims.[44] Our Court of Appeals vacated and remanded our dismissal of Mr. Williams' procedural due process claim, concluding it should have been deemed timely under the mailbox rule based on documents never presented to us.[45] The court of appeals remanded this procedural due process claim for our review on the merits.[46] The parties engaged in discovery.

II.   Analysis

Chief Leach and Sergeant Abt now move for summary judgment on Mr. Williams' remaining procedural due process claim, arguing he (1) failed to exhaust his administrative remedies; (2) failed to adduce evidence of Chief Leach and Sergeant Abt's personal involvement in the decisions to transfer Mr. Williams or cancel his hearing; and (3) was not entitled to a hearing because he was not subjected to discipline.[47] The incarcerated Mr. Williams failed to respond to the Motion.

We conclude, after a careful review of the record, Chief Leach and Sergeant Abt fail to establish Mr. Williams failed to exhaust available administrative remedies. We further conclude Mr. Williams fails to adduce evidence as to Chief Leach's involvement in the alleged due process violation and accordingly dismiss him. We lastly conclude there are genuine issues of material fact precluding summary judgment as to the claim against Sergeant Abt.

### A. Chief Leach and Sergeant Abt fail to prove Mr. Williams did not submit his grievances.

Chief Leach and Sergeant Abt argue Mr. Williams' claim fails because he has not adduced evidence he submitted grievance forms relating to his transfer and denial of a hearing. They further argue his claim must be dismissed because he failed to appeal any of his grievances. We disagree.

The Prison Litigation Reform Act requires incarcerated persons exhaust all available administrative remedies before filing suit in federal court.[48] Exhaustion must be "proper," which means the prisoner must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."[49] And "[f]ailure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim."[50]

Incarcerated persons need only exhaust remedies "available" to them.[51] Our Court of Appeals instructs, "as soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."[52] Failure to exhaust administrative remedies is an affirmative defense which must be pleaded and proved by Chief Leach and Sergeant Abt.[53]

Chief Leach and Sergeant Abt erroneously argue Mr. Williams failed to adduce evidence he submitted his grievances. Mr. Williams produced various grievances referencing his transfer

6

following the September 16 incident. He need not provide supporting documentation proving he exhausted his remedies. Chief Leach and Sergeant Abt bear the burden to affirmatively establish Mr. Williams failed to submit these grievances as shown to us. And they fail to meet this burden. They do not provide an affidavit from the grievance coordinator, for example, swearing they never received Mr. Williams' grievances.[54] They instead simply argue, "all of these slips do not appear to have be[en] submitted to the prison and were never answered."[55] This speculation based on appearances is insufficient to meet their burden in proving Mr. Williams failed to comply with the grievance process and properly exhaust his administrative remedies.

We also disagree with the argument Mr. Williams' claim should be dismissed for failure to appeal his grievances. As explained above, Chief Leach and Sergeant Abt fail to demonstrate he never submitted the grievances. The inmate handbook permits inmates to file appeals if they do not agree with the response provided by the prison; it does not, however, require inmates to appeal non-decisions.[56] The grievance process did not, therefore, require Mr. Williams to appeal the lack of responses to his grievances.

We will, however, permit Chief Leach and Sergeant Abt to move preliminarily for a finding as to the exhaustion issue before proceeding to a jury trial. "[E]xhaustion constitutes a preliminary issue for which no right to jury trial exists," and accordingly, "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury."[57] Chief Leach and Sergeant Abt may therefore adduce evidence – and we may determine – the threshold issue of exhaustion before trial.[58]

> **B.  We dismiss the claim against Chief Leach lacking evidence of his personal involvement.**

Chief Leach and Sergeant Abt next argue we should grant summary judgment because Mr. Williams failed to adduce evidence of their personal involvement in the conduct surrounding his procedural due process claim. We agree only with respect to Chief Leach. Not as to Sergeant Abt.

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"[59] Supervisory civil rights liability cannot be imposed under section 1983 on a *respondeat superior* theory.[60] Personal involvement may be shown through allegations of personal direction or actual knowledge and acquiescence.[61] Neither the filing of a grievance nor the participation in the after-the-fact review of a grievance are sufficient to show personal involvement.[62] At the summary judgment stage, Mr. Williams must adduce evidence supporting Chief Leach's and Sergeant Abt's personal involvement in the alleged violation to bring the state actors to trial.[63]

Mr. Williams fails to adduce evidence of Chief Leach personally involved in the decisions to transfer Mr. Williams or to cancel his disciplinary hearing. No prison records evidence Chief Leach's involvement. Chief Leach further swears he does not play a role in the transfer of incarcerated persons to disciplinary detention, and he accordingly was not involved in Mr. Williams' transfer. Mr. Williams including Chief Leach's name on grievance forms does not demonstrate his personal involvement. Mr. Williams offers no other evidence to contradict Chief Leach's sworn testimony. In sum, there is simply no basis to find Chief Leach was personally involved in the alleged unconstitutional conduct. We must grant summary judgment in his favor.

C.   **There exist genuine disputes of fact as to Sergeant Abt's personal involvement.**

There remain disputes of fact, however, regarding Sergeant Abt's personal involvement. The notice of disciplinary hearing given to Mr. Williams appears to bear Sergeant Abt's name. And she only offers Chief Leach's statement "it is unlikely that Sergeant Abt would have had anything to do with denying [Mr. Williams] any hearings." This speculation is insufficient to overcome the evidence of Sergeant Abt's involvement. We must deny summary judgment with respect to Mr. Williams' due process claim against her.

D.   **We deny summary judgment on the merits of Mr. Williams' due process claim against Sergeant Abt.**

Sergeant Abt argues Mr. Williams' claim also fails because the prison placed him in administrative segregation – not disciplinary detention – following the September 16 incident and therefore did not have to provide him with a hearing. We disagree. Sergeant Abt must address these issues before the fact finder should there be no preliminary finding of exhaustion based on later evidence before trial.

"The process due a pretrial detainee who is transferred to restrictive housing 'varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons.'"[64] Detainees who are transferred into restrictive housing for purely administrative purposes must be given "an explanation of the reason for their transfer as well as an opportunity to respond."[65] "This notice must be within a reasonable time following the transfer and the opportunity to respond can be satisfied by written grievances."[66]

Greater process is required when a detainee is transferred to restrictive housing for disciplinary reasons. This process consists of written notice of the charges at least twenty-four

hours before the hearing, an opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action and any supporting evidence.[67]

We cannot determine whether Mr. Williams received the "due" process as a matter of law because there is conflicting evidence as to whether the prison transferred Mr. Williams for disciplinary reasons, administrative reasons, or both. Chief Leach swears, for example, it "appears that [Mr. Williams] was transferred…on September 28, 2015, but it does not appear from the records that this was based on disciplinary detention." He further swears Mr. Williams "was placed in administrative segregation/protective custody based upon the nature of the charges against him," where he could have certain privileges. The various Inmate Segregation Activity Logs, however, conflict at least in part with Chief Leach's affidavit. For example, the logs appear to show Mr. Williams had been in segregation since the date of the incident. Chief Leach does not address this. It also appears as though the prison did not offer Mr. Williams any privileges besides meals between September 16 and September 27. After September 28, Mr. Williams appears to have been placed on administrative segregation and given more privileges.

If the prison placed Mr. Williams on disciplinary detention before administrative segregation, even briefly, it must afford him greater protections, including the opportunity to present witnesses and documentary evidence. It is undisputed he did not receive any such opportunity or hearing. And even assuming the prison transferred Mr. Williams solely for administrative reasons, due process still requires he receive an explanation for his transfer and an opportunity to be heard, including through the grievance process. Mr. Williams admits the prison told him why he was being transferred, but it is still unclear whether he had an opportunity to be heard regarding those reasons. Mr. Williams claims he submitted grievance forms and requests for

information regarding his transfer and status, but these grievances do not appear to have been received or responded.[68]

In sum, there remain genuine issues of material fact surrounding the reasons for Mr. Williams' transfer and the resulting due process he received, if any. We deny summary judgment on the merits of Mr. Williams' due process claim against Sergeant Abt.

## III.  Conclusion

Chief Leach and Sergeant Abt did not satisfy their burden of showing Mr. Williams failed to grieve and exhaust his administrative remedies. Their speculative suggestions absent sworn evidence do not suffice. But Mr. Williams has not adduced evidence of Chief Leach's personal involvement in the alleged denial of his due process rights but there are questions of material fact concerning Sergeant Abt's personal involvement. We also find genuine issues of material fact as to the reasons for the transfer and the resulting level of due process. We grant the Motion only as to the claim against Chief Leach. We deny the Motion in all other respects. Mr. Williams' claim against Sergeant Abt for violating his procedural due process rights may proceed to trial assuming there is no further preliminary finding as a matter of law on Mr. Williams' failure to exhaust his administrative remedies.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Chief Leach and Sergeant Abt filed their Motion and brief in support of summary judgment and SUMF at ECF Doc. Nos. 187 and 188. They filed an Appendix at ECF Doc. Nos. 187-1 and 187-2. We cite to their appendix using the ECF number and corresponding pagination.

[2] ECF Doc. No. 188-2 at 2.

[3] *Id.*

[4] *Id.*

[5] *See id.* at 2-5.

---

[6] ECF Doc. No. 188-2 at 10.

[7] ECF Doc. No. 88 at 5.

[8] ECF Doc. No. 188-2 at 10-11.

[9] *Id.* at 7-9, 12.

[10] *See id.* at 7-12.

[11] Opening Brief, *Williams v. Delaware County Board of Prison Inspectors*, No. 19-2735 (3d Cir. May 11, 2020) (ECF Doc. No. 32 at 172). Mr. Williams attached a disciplinary hearing notice in his appellate brief which the state actors did not include in their summary judgment appendix. We take notice of this document and Sergeant Abt's signature remaining mindful of our obligation to "read[] [a] *pro se* party's papers liberally and interpret[] them to raise the strongest arguments suggested therein." *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 384 (W.D. Pa. 2007) (citation omitted).

[12] Opening Brief, *Williams*, ECF Doc. No. 32 at 172.

[13] *Id.*

[14] ECF Doc. No. 187-2 at 30.

[15] ECF Doc. No. 188-2 at 29.

[16] *Id.*

[17] *Id.* at 29-30.

[18] *Id.* at 30.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] ECF Doc. No. 188-2 at 77.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] ECF Doc. No. 188-1 at 17.

[30] *See* ECF Doc. No. 188-1 at 185-202.

[31] *Id.*

[32] ECF Doc. No. 1.

[33] ECF Doc. No. 88.

[34] *Id.* at 5.

[35] *Id.*

[36] *Id.* at 6.

[37] *Id.*

[38] See ECF Doc. No. 92.

[39] ECF Doc. No. 108.

[40] *Id.* at 9.

[41] *Id.* at 24-25.

[42] ECF Doc. No. 170.

[43] ECF Doc. No. 172.

[44] *See Williams v. Delaware County Board of Prison Inspectors*, 844 F. App'x 469, 471-75 (3d Cir. 2021).

[45] *Id.* at 472-73.

[46] *Id.*

[47] ECF Doc. No. 187. Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

13

2011)). "Summary judgment is appropriate only if, after drawing all reasonable inferences in favor of the non-moving party, there exists 'no genuine dispute as to any material fact' and the movant 'is entitled to judgment as a matter of law.'" *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 469 (3d Cir. 2021) (quoting *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018)). We do not weigh evidence or make credibility determinations. *Peroza-Benitez v. Smith*, 994 F.3d 157, 164 (3d Cir. 2021) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019)).

"The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

[48] 42 U.S.C. § 1997e(a).

[49] *Cidone v. Blume*, No. 07-1889, 2009 WL 3764083, at *4 (M.D. Pa. Nov. 9, 2009) (quoting *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)).

[50] *Id.* (citing *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir.2004)).

[51] *Shifflet v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019).

[52] *Id.*

[53] *Cidone*, 2009 WL 3764083, at *4 (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002)).

[54] *See Bartelli v. Fedak*, No. 04-907, 2006 WL 1008996, at *4 (M.D. Pa. Apr. 13, 2006) (granting summary judgment to prison officials on exhaustion issue where they submitted an affidavit from the chief grievance officer swearing there were no records evidencing prisoner ever filed a grievance concerning the claims raised in the action).

[55] ECF Doc. No. 187 at 13.

[56] *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013) ("Because [the prison's] procedures did not contemplate an appeal from a non-decision, when [plaintiff prisoner] failed to receive even a response to the grievances…much less a decision as to those grievances, the appeals process was unavailable to him.")

[57] *Id.* at 271.

---

[58] *Id.* at 270-71 (concluding the district court properly held an evidentiary hearing to determine whether the plaintiff properly exhausted his administrative remedies before reaching any of the other asserted bases for summary judgment).

[59] *Hartmann v. Carroll*, 929 F. Supp. 2d 321, 326 (D. Del. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)).

[60] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

[61] *Hartmann*, 929 F. Supp. 2d at 327 (citing *Rode*, 845 F.2d at 1208).

[62] *Id.* (citations omitted).

[63] *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018).

[64] *Singleton v. Harry*, No. 13-2711, 2020 WL 7366365, at *14 (M.D. Pa. Sept. 21, 2020), *report and recommendation adopted*, 2020 WL 6689646 (M.D. Pa. Nov. 13, 2020) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 70 (3d Cir. 2007)).

[65] *Kanu v. Lindsey*, 739 F. App'x 111, 117 (3d Cir. 2018) (quoting *Stevenson*, 495 F.3d at 70).

[66] *Id.* (citations and quotations omitted).

[67] *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)).

[68] *See Steele v. Cicchi*, 855 F.3d 494, 507 (3d Cir. 2017) ("An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.... So long as this occurs, *and the decisionmaker reviews the charges and then-available evidence against the prisoner*, the Due Process Clause is satisfied.) (quoting *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)) (emphasis added).